MAR 1 3 2017

Clerk, U.S. District and
Bankruptcy Courts

# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OG COLUMBIA

CASE NO. 16-01678-KBJ

HOWARD T. TYSON SR.

PLAINTIFF

V

MEGAN BRENNEN, POSTMASTER
GENERAL

## MOTION IN OPPOSITION TO DEFENDANT'S MOTION
## TO DISMISS OR SUMMERY JUDGEMENT

PLAINTIFF HOWARD T.TYSON SR. OPPOSES THE DEFENDANT'S

MOTION TO DISMISS HIS COMPLAINT PURSUANT TO FED. R.CIV.

P. RULE 12 (B 6) AND 56 AND SET FORTH THE FOLLOWING

REASONS WHY THE COURT SHOULD DENY THE MOTION.

1.

A FACTUAL DISPUTE EXIST WHICH CAN ONLY BE RESOLVED BY A JURY.

## THE FACTUAL DISPUTE

THAT PLAINTIFF HOWARD T. TYSON WAS DENIED EMPLOYMENT AT THE GOVERNMENT MAILS FACILITY LOCATED 3300 V STREET N.E. WASHINGTON DC DUE TO HIS RELIGIOUS BELIEF AND EXERCISE, AND THAT HE SUFFERED INJURY SUCH AS LOSS OF JOB , WAGES, AND SUFFERED MENTAL ANGUISH.

SUCH CONDUCT IF PROVEN WITH PREJUDIS, VIOLATES TITLE VII OF THE CIVIL RIGHTS ACT OF 1964.

## DEFENDANT MOTION TO DISMISS OR SUMMERY JUDGEMENT

THE DEFENDANT IN THIS CASE HAS MOVED THE COURT FOR AN ODER DISMISSING OR IN THE AUTURNITIVE SUMMERY JUDGEMENT. IN ESSENCE THE DEFENDANT ON ONE HAND IS ALLEDGING THAT EVEN IF ALL THE ALLIGATIONS IN THE COMPLAINT ARE TRUE PLAINTIFF IS NOT ENTITLED TO ANY LEGAL RELIEF AND THE CASE SHOULD BE DISMISSED. ON THE OTHER HAND THE DEFENDANT CLAIMS THAT THE CASE SHOULD BE DISMISSED FOR A LACK OF A FACTUAL DISPUTE.

TO ESTABLISH THE DEFENDANT'S POSITION HE ALLEGES IN HIS MOTION THAT THE MATERIAL FACTS IN THIS CASE ARE

UNDISPUTED. HOWEVER, THE MATERIAL FACTS IN THIS CASE ARE IN DISPUTE.

## THE DEFENDANT CLAIM

THE DEFENDANT IN THIS CASE IS ATTEMPTING TO SUGGEST THAT; 1. PLAINTIFF WAS NOT DISCRIMINATED AGAINST BASED UPON HIS RELIGIOUS BELIEF AND EXERCISE. 2. PLAINTIFF SUFFERED NO COMPENSABLE INJURIES.  3. PLAINTIFF IS ONLY COMPLAINING ABOUT A LATTERAL TRANSFER. 4. AND THAT WHAT REALLY HAPPENED TO PLAINTIFF WAS NOTHING MORE THAN A MISUNDERSTANDING.  5. AN UNUSUAL STORY OF HOW PLAINTIFF SOME HOW WHILE EMPLOYED AT U.S POSTAL SERVICE CURSEEN & MORRIS MAIL PROCESSING AND DISTRIBUTION CENTER, IN MAY 2014, SAW A POST OF A OPEN POSITION AT THE GOVERNMENT MAILS FACILITY WHERE HE WAS ONCE EMPLOYED, WALKED AWAY FROM CURSEEN & MORRIS AND WENT TO GOVERNMENT MAIL FACILITY INTENDING TO OCCUPY THAT POSITION,  AND THAT AFTER ARRIVING AT GOVERNMENT FACILITY UNEXPECTEDLY, MANEGER CICIL HARRISTON CALLED THE POST MASTER, AND LEARNED THAT THE JOB PLAINTIFF SORT TO OCCUPY WAS POSTED IN ERA AND

THAT THE JOB WAS BEING RECENDED AND THAT AFTER
LEARNING ABOUT THE ERA, MANAGER HARRISTON TOLD
PLAINTIFF TO RETURN TO HIS ASSIGNED DUTY STATION BACK AT
CURSEEN & MORRIS. DEF. MOTI., P. 6-9. ( EMPHASIS SUPPLIED).

HOWEVER, THAT IS NOT WHAT TOOK PLACE IN THIS CASE.

## PLAINTIFF STATEMENT OF DISPUTED FACTS

WHAT TOOK PLACE IN THIS MATTER IS THAT PLANTIFF WAS
ONCE EMPLOYED AT THE GOVERNMENT MAILS FACILITY IN 2009
AS A MAIL HANDLER AND THAT WHILE SO EMPLOYED WAS
SINGLED OUT AND APPROCHED SEVERAL TIMES BY MANAGER
HARRISTON AND TOLD TO TURN HIS GOSPEL MUSIC DOWN.

PLAINTIFF TOLD MANGER HARRISTON THAT OTHER
WORKERS IN HIS AREA HAVE AT TIMES PLAYED SECULAR MUSIC
AND THAT MANAGER HARRISTON NEVER ONCE CONFROTED
THOSE WORKERS ABOUT THEIR MUSIC. SEE; STATEMENT OF
CHRIS TATE, PLANT., APP. EX. I., AND OFFICIAL STATEMENT OF
HOWARD TYSON, PARAGRAPH 1-6, PLANT., APP. EX. 2. ALSO SEE
AFFIDAVIT OF HOWARD TYSON PARAGRAPH  2-4.

PLAINTIFF'S JOB WAS SUBSIQUINTLY ABOLISHED AT THE
GOVERNMENT MAILS FACILITY IN APRIL 2011, AND HE WAS

TRANSFERRED TO THE CURSEEN & MORRIS POSTAL FACILITY,
TO CONTINUE EMPLOYMENT. HOWEVER, MR. TYSON LEFT
THE GOVERNMENT MAIL FACILITY WITH RETREAT RIGHTS
WHICH IS AN "AGREEMENT WITH MANAGEMENT THAT UPON
A JOB OPENING AT THE FACILITY, HE WOULD BE ALLOWED
TO RETURN. "THE MANAGER WHO GAVE PLAINTIFF  THIS
AGREEMENT WAS NO OTHER THAN CICIL HARRISTON. SEE;
PLAINT., APP. EX. 3, PARAGRAPH 7, APP. EX. 4, PARAGRAPH 10.
THESE EXIBITS ARE SWORN AFFIDAVITS OF MANAGER
HARRISTON.

STATING THAT HE NEW MR. TYSON HAD RETREAT RIGHTS BACK
TO HIS FACILITY, AND EXPLAINING HIS UNDERSTANDING OF
RETREATS RIGHT PURSUANT TO THE COLLECTIVE BARGANING
AGREEMENT. ON JANUARY 31ST, 2014, MR, JOHN GIBSON RETIRED
FROM THE GOVERNMENT MAILS FACILITY. OPENING UP A
VACANCY THERE. SEE PLAINT., APP., EX. 5. PLAINTIFF WAS
SENIOR  PERSON IN LINE FOR THAT POSITION, AND ON MAY THE
19TH, 2014 WAS OFFERED AND ACCEPTED THAT POSITION. SEE
PLAINT., APP., EX. 6.

HOWEVER, BEFORE PLAINTIFF COULD REPORT TO HIS NEW
JOB, ON MAY 21ST, 2014 HE WAS CALLED TO PLANT MANAGER

YOLANDA SANDERS OFFICE AT CURSEEN & MORRIS, AND SHE INFORMED HIM THAT HIS RETREATED POSITION AT THE GOVERNMENT MAILS FACILITY WAS RECENDED.  PLAINTIFF ASKED MS. SANDERS  IF SHE HAD DOCUMENTATION INDICATING THAT THE JOB WAS RESENDED ?  SHE MENTIONED THAT THE UNION WOULD HAVE A LETTER INDICATING THE JOB WAS RECENDED. SEE AFFIDAVIT OF HOWARD TYSON PARAGRAPH 13-15

ON MAY 21ST, 2014 PLAINTIFF CONTACTED UNION REPRESENTATIVE LAMAR GRIGSPY WHO ADVISED HIM THAT HE DID NOT HAVE A LETTER INDICATING THE JOB HAD BEEN RECENDED. SEE AFFIDAVIT OF HOWARD T. TYSON PARAGRAPH 16.

ON MAY 21ST, 2014  PLAINTIFF CALLED  MAIN UNION OFFICE AND SPOKE TO MR. DICK . PLAINTIFF INFORMED HIM THAT MANAGER SANDERS INFORMED HIM, THAT THE RETREATED POSITION WAS RESENDED AND THAT UNION REPRESENTATIVE LAMAR GRIGSPY WOULD HAVE A COPY OF THE LETTER WHICH HE DID NOT. MR. DICK ADVISED PLAINTIFF THAT IF THE UNION REPRESENTATIVE DID NOT HAVE A LETTER INDICATING THAT THE POSITION WAS RESENDED, TO REPORT TO THE RETREATED POST. SEE AFFIDAVIT OF HOWARD TYSON 17-19.

PLAINTIFF RETURNED TO WORK MAY 22ND, 2014 AND WAS NOT PROVIDED ANY LETTER FROM SUPERSORS OR PLANT MANAGEMENT INDICATING THAT THE RETREATED POST WAS INDEED RESENDED. AT NO TIME BETWEEN MAY 19TH 2014 THRU JUNE 3RD, 2014 DID PLAINTIFF EVER RECEIVE A LETTER FROM ANYONE INDICATING THAT THE RETREATED POST HAD BEEN RESENDED. SEE AFFIDAVIT OF HOWARD TYSON  PARAGRAPH  20.

HOWEVER, ON JUNE THE 4TH 2014 PLAINTIFF WAS CALLED  TO THE OFFICE OF MANAGER SANDERS, WHO SUBSIQUENTLY GAVE HIM A UNSIGNED LETTER REPRESENTING THAT THE RETREATED POST WAS RECENDED. PLAINTIFF NOTICED THAT THE LETTER WAS UNSIGNED, AND HE QUESTIONED HER ABOUT THE LACK OF POST MASTER ROANE'S SIGNATURE. AFTER BEING QUESTIONED, SHE SHRUGGED HER SHOULDERS AND SHOWED PLAINTIFF HER PALMS. SEE AFFIDAVIT OF HOWARD TYSON, PARAGRAPH 21-23

PLAINTIF SUBSEQUENTLY  PICKED UP THE LETTER AND PROCEEDED TO THE UNION OFFICE. SEE AFFIDAVIT OF HOWARD TYSON, PARAGRAPH, 24

PLAINTIFF PROCEEDED TO THE UNION OFFICE TO SHOW THE UNION REPRESENTATIVE LAMAR GRIGSPY THAT THE LETTER WAS NOT AUTHENTIC BUT HIS COMPLAINT WENT UNANSWERED

AFFIDAVIT PARAGRAPH 24-25.

ON JUNE 8TH 2014, PLAINTIFF APPROCHED POST MASTER

ROANE, AND ASKED HIM WHY DID HE RESEND THE RETREATED

POST. HIS ANSWER WAS THAT HE DID NOT RESEND ANYONES

POSITION . PLAINTIFF INFORMED HIM THAT HE HAD A LETTER

FROM MANAGER SANDERS INDICATING THAT HE HAD. POST

MASTER ROANE REQUESTRED THAT PLAINTIFF BRING A COPY OF

THE LETTER TO HIS OFFICE. SEE AFFIDAVIT OF HOWARD TYSON

PARAGRAPH 26-28.

ON JUNE  8th 2014, PLAINTIFF DELIVERED A COPY OF THE

LETTER TO HIS OFFICE, SEE HOWARD TYSON AFFIDAVIT 28-29

ON JUNE 13TH 2014, AFTER READING A COPY OF THE LETTER

POST MASTER ROANE ADVISED PLAINTIFF TO REPORT TO HIS

RETREATED POST DUE TO THE LETTER ALEGEDLY FROM HIS

OFFICE BEEING IN QUESTION. SEE AFFIDACVIT OF HOWARD

TYSON  PARAGRAPH 30-31.

ON JUNE 16TH 2014, PLAINTIFF, UNDER ADVISEMENT OF POST

MASTER ROANE REPORTED TO HIS RETREATED POST AT

GOVERNMENT MAIL FACILITY.

UPON ARRIVING TO HIS POST MANAGER HARRISTON YELD

TO PLAINTIFF " CAN I HELP YOU ?" PLAINTIFF RESPONDED BY

TELLING HIM THAT THEIR CONVERSATION SHOULD NOT BE BEFORE THE OTHER EMPLOYEES, BUT SHOULD BE DISCUSSED PRIVATELY IN HIS OFFICE. MANAGER HARRISTON EXCUSED HIMSELF AND MOTIONED TO PLAINTIFF TO FOLLOW HIM.

AFTER ARRING THERE, MANAGER HARRISTON TOLD PLAINTIFF THAT HE HAD NO POSITION FOR HIM. PLAINTIFF REPLIED THAT DUE TO A CERTAIN LETTER BEING IN QUESTION, HE REPORTED TO THE POST AS INSTRUCTED BY POST MASTER ROANE.  AFTER HEARING THAT,  MANAGER HARRISTON DROPPED HIS HEAD AND TOLD PLAINTIFF TO REPORT TO THE GROUP LEADER SO HE COULD BE ASSIGNED A POSITION. PLAINTIFF RESPONDED BY TELL THE MANAGER THAT HE WAS UNDER LIMITED DUTY AND THAT BY POSTAL POLOCY MANAGEMENT IS RESPONSIBLE FOR THE ASSIGNMENT. PLANT MANAGER RESPONDED BY ADVISING PLAINTIFF THAT THE GROUP LEADER CAN CARRY OUT THAT RESPONSIBILITY. PLAINTIFF REPORTED TO THE GROUP LEADER AND WAS ASSIGNED TO A DUTY STATION.

AFTER WORKING APPROXIMATELY THREE HOURS PLAINTIFF WAS CALLED TO THE MANAGERS OFFICE AND MR. HARRISTON TOLD HIM THAT " THEY SAID FOR HIM TO REPORT BACK TO CURSEEN & MORRIS. " PLAINTIFF ASKED MANAGER

HARRISTON WHO IS THE THEY HE IS TALKING ABOUT. MANAGER

HARRISTON RESPONDED BY STATING " I AM THE

PLAINT MANAGER AND I AM INSTRUCTING YOU TO RETURN

BACK TO THE PLAINT. " AFTER HEARING THAT, PLAINTIFF

COMPLIED WITH THE ORDER. SEE AFFIDAVIT OF HOWARD TYSON

PARAGRAPH 32-44.

PLAINTIFF ARRIVED BACK AT CURSEEN & MORRIS AT

APPROXITMATELY 3:00 P.M. UDER NO DURESS FROM

MANAGEMENT AND BEGAN WORKING. SUBSEQUENTLY AFTER

WORKING FOR FOUR DAYS PLAINTIFF FILED A PRE COMPLAINT

WITH THE EEOC, 1K-206-0049-14.

## PLAINTIFF STATEMENT OF DISPUTED MATERIAL FACTS

THE FACT THAT MANAGER HARRISTON CONFRONTED

PLAINTIFF ABOUT PLAYING GOSPEL MUSIC ON SEVERAL

OCCASIONS BUT NEVER ONCE CONFRONTED OTHER EMPLOYEES

THAT PLAYED SECULAR MUSIC THAT WAS IN PLAINTIFF WORK

AREA COULD SUGGEST TO A JURY THAT; 1. THE MANAGER WAS

MORE IRRITATED ABOUT HEARING THE GOSPEL MUSIC THAN

HEARING THE SECULAR MUSIC. 2. IT COULD ALSO SUGGEST

THAT THE MANAGER HAD A DISLIKE FOR THE GOSPEL MUSIC. 3.

IT COULD ALSO SUGGEST A MOTIVE WHY THE MANAGER DID

NOT WANT PLAINTIFF EMPLOYED BACK AT THE FACILITY.

THE DEFENDANT ON THIS POINT WANTS TO PRESS THAT THE REASON THE MANAGER TOLD PLAINTIFF TO TURN HIS GOSPEL MUSIC DOWN AND NOT OFF, INDICATE THE MUSIC WAS TOO LOUD, NOT THAT THE MANAGER SINGLED OUT PLAINTIFF BASED ON THE RELIGIOUS NATURE OF THE MUSIC. DEF., MOTI., p. 8. HOWEVER, THE DEFENDANT HAS NO EVIDENCE BEFORE THE COURT SHOWING THAT PLAINTIFF MUSIC WAS TOO LOUD AND THAT THAT IS A TRUE REASON THE MANAGER CONFRONTED PLAINTIFF. THERE IS NO EVIDENCE OF ANY KIND FROM THE MANAGER OR OTHER EMPLOYEES AT THAT FACILITY INDICATING THAT PLAINTIFF WAS BLASTING OR BEING DISRUPTED WITH THE GOSSPEL MUSIC. THE DEFENDANT CLAIMED THAT THE MANAGER ONLY CONFRONTED PLAINTIFF BECAUSE HIS MUSIC WAS TOO LOUD IS PURE SPECULATION.

PLAINTIFF CLAIM OF RELIGIOUS DISCRIMINATION BEING THE REASON HE WAS DENIED EMPLOYMENT AT GOVERNMENT MAIL FACILITY IS MORE PROBABLE ESPECIALLY WHEN THERE IS EVIDENCE IN THE RECORD THAT POINTS TO MANAGER HARRISTON BEING THE FIRST PERSON MAKING THE DECISION TO STOP PLAINTIFF FROM EXERCISING HIS RETREAT RIGHT. SEE

PLAINT., APP. EX. 7.

IN THIS LETTER DATED JUNE 4TH, 2014 THAT PLAINTIFF

RECEIVED FROM MANAGER SANDERS, IT CLEARLY SHOWS

WHO IT WAS THAT DID NOT WANT PLAINTIFF BACK AT

GOVERNMENT MAIL. IT WAS MANAGER HARRISTON. THE

LETTER READS, "THIS IS TO ADVISE YOU THAT THE LETTER

DATED MAY 19TH , 2014 TO OFFER YOU RETREAT RIGHTS AT

GOVERNMENT MAILS IS RECENDED DUE TO MANAGEMENT

RIGHTS TO REVERT THE POSITION."

THE HOUSE OF CARDS THAT THE DEFENDANT BUILT AGAINST

PLAINTIFF TO PREVENT HIM FROM HIS RETREAT RIGHTS IS

FALLING. MR. HARRISTON WAS THE MANAGER AND HE WAS THE

PERSON WHO DID NOT WANT MR. TYSON THERE. THEREFORE,

"THE DEFENDANT CLAIM OF MANAGER HARRISTON NOT HAVING

ANYTHING TO DO WITH THE DECISION NOT TO ALLOW

PLAINTIFF TO BE EMPLOYED AT GOVERNMENT MAIL, THE JOB

WAS POSTED IN ERA, THAT A CHANGE IN MAIL VOLUME AND

RETAIL REVENUE, THAT THE POSITION WAS NO LONGER

NECCISARY TO THE EFFICIENT OPPERATIONAL NEEDS OF THE

POSTAL SERVICE," PLAINT, APP. EX. 8., "THAT PLAINTIFF SHOWED

UP UNEXPECTEDLY AT GOVERNMENT MAIL FACILITY, THE

MANAGER CALLING POST MASTER GERALD ROANE AND

LEARNING FOR THE FIRST TIME THAT THE JOB PLAINTIFF

HAD RETREATS RIGHTS TO WAS POSTED IN ERA AND THAT

THE JOB WAS BEING REVERTED/ RECENDED, AND LEARNING

ABOUT THE ERA, AND THAT PLAINTIFF RELIGION NOT BEING A

FACTOR IN DENYING HIM EMPLOYMENT AT GOVERNMENT

MAIL," IS ALL A HOAX, FRAUD, AND A SMOKE SCREEN. "AN

OFFICIAL WHO WAS INVOLED IN THE DECISION MAKING

CAN CONSTITUTE DIRECT PROOF OF DISCRIMINATION EVEN

THOUGH THAT PERSON IS NOT THE ULTIMATE DECIDING

OFFICIAL"  BERNSTEIN v. SEPHORA, DIV. of BFS GROUP, 182 F.

Supp. Iid 1214  (S.D. Fla. 2002).

### BREAKDOWN IN PROCESS


THE DEFENDANT CLAIM THAT THE JOB WAS POSTED IN ERA

THAT CLAIM IS VERY TRUE, BUT NOT FOR THE REASON GIVEN.

WHAT MAKES THE POSTING OF THE JOB ERONIOUS IS THAT

ACCORDING TO THE NATIONAL POSTAL MAIL HANDERLERS

UNION MANUAL (NPMHU) ARTICLE 12.3 B3;

" ALL VACANT OR  NEWLY ESTABLISHED CRAFT DUTY

ASSIGNMENTS SHALL BE POSTED FOR EMPLOYEES ELIGIBLE TO

BID WITHIN TEN DAYS AFTER A DETERMINATION HAS BEEN
MADE THAT THE POSITION IS NOT TO BE REVERTED. IF A VACANT
DUTY HAS NOT BEEN POSTED WITHIN 30 DAYS, THE
INSTILLATION HEAD OR THE INSTILATION HEAD DESIGNEE
SHALL ADVISE THE UNION IN WRITING  OF THE REASON THE
POSITION IS BEING WITHELD AND THE INTISIPATED LENGTH
OF TIME SUCH POSITION WILL REMAIN VACANT. IF THE
VACANT ASSIGNMENT IS REVERTED, A NOTICE SHALL BE POSTED
WITHIN 10 DAYS ADVISING OF THE ACTION TAKEN AND THE
REASON THERFORE. IN ADDITION, A COPY OF THE NOTICE SHALL
BE PROVIDED TO THE APPROPRIATE UNION REPRESENTATIVE.
SEE PLAINT., APP. EX. 9 SECTION B3.

ACCORDING TO THE (NPMHU), ONCE MR. GIBSON RETIRED
FROM GOVERNMENT MAIL, THE INSTELLATION HEAD
(MANAGER HARRISTON), HAD 10 DAYS TO DETERMINE IF THE JOB
WAS TO BE OR NOT TO BE REVERTED. AND IF THE ASSIGNMENT
HAD NOT BEEN POSTED WITHIN 30 DAYS THE HEAD HAD TO
ADVISE THE UNION IN WRITING OF THE REASON THE POSITION
WAS BEING WITHELD AND THE ANTISSAPATED LEGNTH OF TIME
SUCH POSITION WOULD REMAIN VACANT. THE DEFENDANT WAS
FURTHER REQUIRED TO PUT OUT A NOTICE WITHIN 10 DAYS

ADVISING OF THE ACTION TAKEN, AND PROVIDE THAT NOTICE TO THE POSTAL UNION.

MR. GIBSON RETIRED 1/31/14 Id.,  AND MANAGER HARRISTON TOOK NONE OF THE ABOVE ACTIONS. THIS COULD SUGGEST TO A JURY THAT WHEN IT CAME TO MR. TYSON THE MANAGER FOLLOWED NONE OF THE RULES.

THE POLOCY CLEARLY STATES THAT MR. HARRISTON, THE INSTELLATION HEAD OF GOVERNMENT MAILS HAD TO MAKE THE DECISION WHETHER THE JOB WAS TO BE REVERTED, NOT THE POST MASTER , MR. COLES, MS. SANDERS OR ANY UNION OFFICIAL. THEREFORE, THE DEFENDANT CLAIM THAT IT WAS NOT MANAGER HARRISTON THAT MADE THE DECISION TO RESEND THE POSITION IS NOT TRUE.

THE EVIDENCE SHOW THAT IT WAS MR. HARRISTON THAT GOT THE BALL ROLLING TO RESEND THE POSITION, AND THE RECORD SHOWS THAT MR. ROANE, MR. COLES, AND MS. SANDERS ALL GOT INVOLVED. FOR INSTANCE; THE (NPMHU) , 12.3-B3 DOES NOT ALLOW FOR ANYONE ELSE TO MAKE THE DECISION BUT THE GAMING INSTELLATION HEAD OR HIS DESIGNEE, AND MR. ROANE, MR. COLES AND MS. SANDERS DOES NOT FIT THE DISCRIPTION.

### BEING REVERTED VERSUS WAS REVERTED

IN A LETTER DATED MAY 29TH, 2014 MR. CHRISTOPHER COLES, CUSTOMER SERVICE SUPPORT, SENT OUT A LETTER TO THE POST MASTER, AREA MANAGEMENT, LABOR RELATION, UNION AND LOCAL BID MANAGEMENT FILE, STATING THE INTENT OF THE U.S. POSTAL SERVICE TO REVERT PLAINTIFF POSITION. TO START WITH, WHILE THE LETTER IS WRITTEN TO INDICATE THAT MAILHANDLER POSITIONS WILL BE REVERTED, WHICH MEANS MORE THAN ONE. THE ONLY POSITION MENTIONED IN THE LETTER IS THE ONE PLAINTIFF POSESSED.

HOWEVER, THE KEY WORDS IN THIS LETTER IS "INTENT TO REVERT". Id. THIS SAME THEME CAN BE FOUND IN THE AFFIDAVIT OF MANAGER HARRISTON, PARAGRAPH 7., " THAT THE JOB WAS BEING REVERTED. " Id.

WHEN SOMETHING IS BEING DONE OR INTENDING TO BE DONE, IT MEANS THAT IT HAS NOT YET BEEN DONE. POINT; WHEN MR. COLES AND MANAGER HARRISTON TALK ABOUT PLAINTIFF RETREATED POSITION, THEY ARE INDICATING THAT WHAT THEY ARE TALKING ABOUT HAS NOT YET BEEN DONE. ALSO, WHEN THE

LETTER DATED MAY 29TH 2014 WAS WRITTEN THE POSITION AT
GOVERNMENT MAIL WAS STILL ACTIVE AND HAD NOT BEEN
REVERTED. ALSO, WHEN MR. HARRISTON UNDER OATH STATED
THAT HE CALLED THE POST MASTER WHEN PLAINTIFF SHOWED
UP AT HIS INSTELLATION, THE JOB HAD NOT YET BEEN
REVERTED/ RESCINDED.  THEREFORE, PLAINTIFF WAS WELL
WITHIN HIS RIGHTS TO PROCEED TO GOVERNMENT MAIL. AND
FOR THE MANAGER TO TELL PLAINTIFF THAT HE HAD NO JOB
FOR HIM WHEN THE POSITION WAS OPEN , CAN SUGGEST TO A
JURY THAT THE MANAGER EVEN THOUGH HE HAD AN
AGREEMENT WITH MR. TYSON TO RETURN TO GOVERNMENT
MAIL, DID NOT WANT HIM THERE. IT CAN ALSO BE SAID THAT
THE LETTER BY MR. COLES IS FRAUDULANT AND WAS WRITTEN
BY THE DEFENDANT TO SUPPRESS THE FACTS THAT IT WAS MR.
HARRISTON THAT DID NOT WANT THE PLAINTIFF BACK AT THE
GOVERNMENT MAIL FACILITY.

## THE QUESTIONS

### 1.

WHY DID MR. HARRISTON NOT WANT PLAINTIFF BACK AT
THE GOVERNMENT MAIL FACILITY?

THE DEFENDANTS STORY IS THAT IT WAS NOT MR. HARRISTON MAKING THAT DECISION, BUT HIGHER UP. BUT THAT STORY HAS BEEN DEBUNKED, AND THE DEFENDANT HAS NOT PRESENTED ANY OTHER REASON OR THEORY WHY PLAINTIFF WAS DENIED HIS RETREAT RIGHTS .

THE PLAINTIFF ON THE OTHER HAND HAS ALLEGED RELIGIOUS DISCRIMINATION AS THE REASON, AND THE DEFENDANT HAS NOT LEGALLY REFUTED IT.

### 2.

WAS PLAINTIFF DISCRIMINATED AGAINST BASED UPON HIS RELIGION ?

A JURY SHOULD ANSWER THESE QUESTIONS, BECAUSE THE STORY THE DEFENDANT IS TRYING TO TELL IS FAULSE, AND NOT SUPPORTED BY REAL CREDIBLE EVIDENCE.

### ECONOMIC HARM

BECAUSE THE DEFENDANT DISCRIMINATED AGAINST PLAINTIFF, AND FAILED TO EMPLOY HIM AT THE GOVERNMENT MAIL FACILITY, PLAINTIFF WAS PLACED  IN AN OUT OF SCHEDULED POSITION. WHAT THIS MEANS, IS THAT THE HOURS BETWEEN THE TWO POSITIONS DIFFERED BY THREE AND ONE

HALF HOURS. ACCORDING TO THE (NPMHU) AND THE POSTAL (ELM) WHICH IS THE CONTRCTUAL MANDATE BETWEEN THE EMPLOYER AND THE EMPLOYEE.

WHICH STATES, IF THE EMPLOYEE CAUSES A HINDERENCE OF ANY EMPLOYEE FROM OBTAINING HIS ASSIGNMENT, THE DIFFERENCE OF THE HOURS OF SAID POSITIONS, MUST BE PUT INTO A QUANOTATIVE QUALITY, AND A MONITORY AMOUNT MUST BE ADDED TO IT. WHICH IN THAT MONITARY AMOUNT, PLAINTIFF LOST APPROXITMATELY $ 66, 851.12. FROM JUNE 16TH 2014, THRU SEPTEMBER 8TH 2015 IN THE OUT OD SCHEDULED POSITION.

WHERE OVERTIME IS INVOLVED, PLAINTIFF LOST APPROXITMATELY 25,000 DOLLARS.

### FAILURE TO HONOR SECTION 12.3/ B3 CLAIM

THE DEFENDANT MOVES THE COURT TO DISMISS PLAINTIFF CLAIM OF FAILURE TO HONOR SECTION 12.3/B3,. BECAUSE 1. THE CLAIM FAILS TO MEET THE BASIC PLEADING STANDARD EMBODIED IN RULE 8 (a) OF FEDERAL RULES OF CIVIL PROCEDURE. 2. THE CLAIM APPEARS TO BE A MERE REPACKAGING OF A DEFICIENT DISCRIMINATION CLAIM. 3. THAT

PLAINTIFF CANNOT SUE FOR AN ALLEGED VIOLATION OF THE
NATIONAL AGREEMENT UNLESS HE AVAIL HIMSELF OF
GRIEVANCE AND ARBITRATION PROCEDURE.

HOWEVER, THE SECTION OF THE AMENDED COMPLAINT
THE DEFENDANT IS TALKING ABOUT IS WHERE THE PLAINTIFF IS
SIMPLY TALKING ABOUT THE TYPE OF RELIEF HE IS SEEKING.
THE PLAINTIFF IS NOT SUING FOR A VIOLATION OF THE
NATIONAL AGREEMENT. PLAINTIFF IS SUING THE DEFENDANT
FOR RELIGIOUS DISCRIMINATION UNDER TITLE VII OF THE CIVIL
RIGHTS ACT  OF 1964 WHICH HE HAS A RIGHT TO DO .
ALEXANDER v. GARDNER- DENVER, 415 U.S. 36 (1964)

## STANDARD OF REVIEW

A RULE 12 (b)(6) MOTION TESTS THE LEGAL SUFFICIENCY OF A
COMPLAINT. IN RULING ON A MOTION TO DISMISS, THE COURT
"MUST CONSTRUE THE COMPLAINT IN A LIGHT MOST
FAVORABLE  TO THE PLAINTIFF AND MUST ACCEPT AS TRUE ALL
FACTUAL INFERENCES DRAWN FROM WELL-PLEADED FACTUAL
ALLEGATIONS. " JOVANOVIC v. US-ALGERIA Bus. COUNCIL, 561
F.Supp. 2d 103. 110 (D.D.C. 2008). IN BELL ATLANTIC Corp. v.

TWOMBLY, SUPREME COURT CLARIFIED THE STANDARD OF
PLEADING THAT PLAINTIFF MUST MEET IN ORDER TO
SURVIVE A MOTION TO DISMISS UNDER RULE 12(b)(6). THE COURT
NOTED THAT "FEDERAL RULE OF CIVIL PROCEDURE 8(a)(2)
REQUIRES ONLY A SHORT AND PLAIN STSTEMENT OF THE CLAIM
SHOWING THAT THE PLEADER IS ENTITLED TO RELIEF; IN ORDER
TO GIVE THE DEFENDANT FAIR NOTICE OF WHAT NYSE CLAIM IS
AND THE GROUND UPON WHICH IT REST.

PLAINTIFF CONTENDS THAT HIS COMPLAINT CONTAINS
SUFFIECIENT FACTUAL MATTER, ACCEPTED AS TRUE, TO STATE
A CLAIM TO RELIEF THAT IS PLAUSIBLE ON FACE. ASCHROFT v.
IQBAL, 556 U.S. 662 (2009).

WHERE THERE IS NO GENUINE DISPUTE AS TO ANY MATERIAL
FACT AND THE MOVANT IS ENTITLED TO JUDGEMENT AS A
MATTER OF LAW, SUMMERY JUDGEMENT IS WARRENTED BY
RULE 56(a) OF THE FEDERAL RULES OF CIVIL PROCEEDURE.
ANDERSON v, LIBERTY LOBBY, INC., 477 U.S. 242, 247-48 (1986). A
GENUINE ISSUE OF MATERIAL FACT IS ONE THAT WOULD
CHANGE THE OUTCOME OF THE LITIGATION. ANDERSON, 477 U.S.
At 248.

IN THIS CASE MATERIAL FACTS ARE IN DISPUTE

## CONCLUSION

FOR ALL THE REASONS STATED, THIS COURT SHOULD DENY AND

DISMISS THE DEFENDANT MOTION.

RESPECTFULLY SUBMITTED

*Howard T. Tyson Sr.*

HOWARD T. TYSON SR.

Certificate of Service.

I certify that a copy of this Motion was mail to the Attorney's Office Located at 555 4th St. N.W. Washington D.C. 207 on March 12th 2017 by First Class Mail.

Joshua Kolsky
555 4th St. NW.
Washington D.C.

Howard I. Typon

# APPENDIX

APP-1   Chris Tate

APP-2   Howard Tyson

APP-3   Cicil Harriston

APP-4   Cicil Harriston

APP-5   John Gibson

APP-6   Howard Tyson

APP-7   Cicil Harriston/Gevald Roane

APP-8   Cicil Harriston

APP-9   Vacant Assignment Instructions.

APP-10.   Ecconomic Harm

January 9th, 2017

I Chris Tate was aware of manager Harriston
bothering mailhandler tyson when he played the
radio. Tyson played gospel music and sang
songs. Harriston didnt bother others that I know
of. I played music. He never said anything to me
about it .

Tate

1-9-17





**UNITED STATES POSTAL SERVICE®**

EEO ... int of Discrimination in the Postal Service
*(See Instructions and Priv... Act Statement on Reverse)*

| 1. Name  Howard T Tyson | 2. SSN or EIN  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 | 3. Case No.  1K-206-0049-14 |
|---|---|---|

| 4a. Mailing Address (Street or P.O. Box)  12018 Long Ridge Ln | 4b. City, State, and Zip + 4  Bowie MD 20715-2352 |
|---|---|

| 5. Email Address  Tysontoe @ aol. Com. | 6. Home Phone  202-431-1764 | 7. Work Phone |
|---|---|---|

| 8. Position Title (USPS Employee Only)  Group leader | 9. Grade Level (USPS Employee Only)  5 | 10. Do You Have Veteran's Preference Eligibility  ☑ Yes   ☐ No |
|---|---|---|

| 11. Installation Where You Believe Discrimination Occurred *(Identify Installation, City, State, and Zip+4)*  Government Mail | 12. Name & Title of Person(s) Who Took the Action(s) You Allege Was Discriminatory |
|---|---|

| 13a. Name of Your Designated Representative  James Pickett    Jr | 13b. Title  Clerk |
|---|---|

| 13c. Mailing Address (Street or P.O. Box)  5302 Broadwater Court | 13d. City, State, and ZIP +  Temple Hills MD 20748 |
|---|---|

| 13e. Email Address  "Tysontoe @ aol. Com" | 13f. Home Phone  (301)-351-9232 | 13g. Work Phone  ( ) |
|---|---|---|

Providing this information will authorize the Postal Service to send important documents electronically.

**14. Type of Discrimination You Are Alleging**

☐ Race *(Specify)*

☐ Color *(Specify)*

☑ Religion *(Specify)*

☐ National Origin *(Specify)*

☐ Sex *(Specify)*

☐ Age *(40+) (Specify)*

☐ Retaliation *(Specify Prior EEO Activity)*

☐ Disability *(Specify)*

☐ Genetic Information *(Specify)*

**15. Date on Which Alleged Act(s) of Discrimination Took Place**

**16.** Explain the specific action(s) or situation(s) that resulted in you alleging that you believe you were discriminated against (treated differently than other employees or applicants) because of your race, color, religion, sex, age (40+), national origin, genetic information or disability. *Note that if your allegation is like or related to a previous complaint, that complaint may be amended. 29 C.F.R. § 1616.106(d)*

During my First tenur at Government Mails. While working. I played gospel music. Manager Harris approached my station to request that I turn my music down. I explained to him that, when he's sitting out on the workroom Floor, he's where the post office gave to the clerks and mail handlers this Floor. So we could do our work. He said that the music is disturbing him while he did his work. I mentioned to him that, the post office gave him his own personal office, so that no one could disturb him, while he did his work in private. Harrison allowed the job to be posted and said nothing about not needing help until he was told that I was accepting my retreat rights. He doesn't want me there.

**17.** What Remedy Are You Seeking to Resolve this Complaint?  none specified

open

**18.** Did You Discuss Your Complaint with a Dispute Resolution Specialist or a REDRESS Mediator?

☐ Yes *(Date you received the Notice of Final Interview):*   ☑ No

| 19a. Signature of Dispute Resolution Specialist | 19b. Date  July 18, 2014 |
|---|---|

RECEIVED
JUL 23 2014
NEEOISO

| 20. Signature of Complainant or Complainant's Attorney | 21. Date of this Complaint  Feb... 2014 |
|---|---|

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| ██ UNITED STATES POSTAL SERVICE® **EEO Investigative Affidavit (Continuation Sheet)** | 2 | 4 | 1K-206-0046-14 |

4. What is your organizational relationship to the Complainant?

ANSWER. I currently have no organizational relationship with him. 2 years ago when he worked at the Government Mails facility he reported to a supervisor who reported to me.

5. How long have you been in your current assignment?

ANSWER. About 6 years.

6. What assignment did you have on June 16, 2014?

ANSWER. Same assignment I have now.

CLAIM: The Complainant alleged discrimination based on Religion when, on June 16, 2014 he was instructed not to report to his new bid position.

Please describe in detail your involvement in instructing the Complainant not to report to his new bid position on June 16, 2014. At a minimum, you should address the following:

   7. Who was the management official who instructed the Complainant not to report to his new bid position on June 16, 2014? Please provide name, position title, and work location.

ANSWER. On June 16, 2014 Mr. Tyson showed up at the Government Mails facility. Mr. Tyson told me that the Postmaster told him to report there. I had no knowledge that he was going to report that day.  I told him to clock in until I found out what was going on.  I called the Postmaster and he denied telling Mr. Tyson to report to the Government Mails facility.  I found out that a Mail Handler job at the Government Mails facility that Mr. Tyson had retreat rights to, was posted in error, and that the job was being reve reverted rted. I was aware that Mr. Tyson had retreat rights back to Government Mails because two years ago when he was excessed from the facility he was told that he would have retreat rights.  After I spoke with the Postmaster and found out about the error in posting, I told Mr. Tyson to report back to the Plant.

   8. Why was the Complainant instructed not to report to his new bid position on June 16, 2014?

ANSWER. See my answer to Question 7.

I declare under penalty of perjury that the foregoing is true and correct.

| | Date Signed |
|---|---|
| *[signature]* | 8-25-2014 |
| PS Form 2819, March 2001 | |

*[signature]* Cecil Harriston

*823*
*#51 5469*

*(3)*

06/25/14 08:05AM EDT Barei Associates -> Cecil Harriston          2025232105 Pg 5/8

| | | Page No. | No. Pages | Case No. |
|---|---|---|---|---|
| UNITED STATES POSTAL SERVICE® | EEO Investigative Affidavit (Continuation Sheet) | 2 | 4 | 1K-206-0049-14 |

9. Was the Complainant attempting to exercise "retreat rights"? If so, why were the Complainant's "retreat rights" not granted? Please explain in detail.

ANSWER. See my answer to Question 7.

10. Please explain your understanding of the "retreat rights" provision in the Collective Bargaining Agreement.

ANSWER. If a Mail Handler is excessed to another installation and the installation that he was excessed from has an available vacancy, the employee has retreat rights back to original installation. In the current situation at Government Mails, I am still losing Mail Handler jobs, and could lose up to 21 more.

11. What position was the Complainant attempting to "retreat to"?

ANSWER. See my answer to Question 7.

12. Was the Complainant eligible to "retreat to" this position?
    a. If no, please explain why he was not eligible to "retreat to" the position.

ANSWER. See my answer to Question 7.

13. Was the position that the Complainant was attempting to "retreat to" posted for bid?

ANSWER. Yes it was posted in error. I do not recall the date. I believe that it was automatically posted because a Mail Handler retired which triggers an automatic posting within a specific time period.

14. Did the Complainant file a written request to be returned to the first available vacancy in the same salary level and craft in the installation from which he was reassigned? If so, please provide a copy.

ANSWER. I am not aware of one.

15. In the last 12 months, please identify other Mail Handler employees under your supervision who have been granted "retreat rights". Please provide name, position title, work location, and name of supervisor, and work location.

ANSWER. I am not aware of any. There have not been any Mail Handler bids posted for 2 years.

16. For each of the employees that you identified in your response to Question 15, please answer the following:
    a. Please provide a copy of the notice indicating that they were granted "retreat rights".

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---|---|
| Cecil Harriston | 8-25-2014 |

PS Form 2569, March 2001



# ATTENTION ATTENTION ATTENTION

# ALL MAILHANDLER EMPLOYEES

Final Posting 82764:

Open: 05/12/2014  Close: 05/21/2014

Position #95298122  – **Will not be awarded**

2315-01XX MAIL HANDLER KP0008 M7 04 TOUR II LDC:43
EG:1=Full Time

Bidding Vacant 20040689 GOVERNMENT MAILS TOUR-II
WASHINGTON Mail Handlers-
NonHQ

JOB SLOT COMMENTS: CMS JOB SLOT 4776085
QUALIFICATIONS :
SECTION:
WORK SCHEDULE: 1130-2000-30L-Sa-Sus

POSTING COMMENTS :

VACATED BY : John Gibson EMP ID: 3110 ON DATE: 1/31/2014



 *UNITED STATES POSTAL SERVICE*

May 19, 2014


Howard Tyson
EIN: 01016038
JCTM
Washington DC PO


SUBJECT: Offer of Retreat Rights


At this time, you have an option to exercise your retreat rights preference on position Mail Handler at Government Mails. The position is located at in the 3300 V Street NE Washington DC Tour – 2. The schedule of the position is 1130-1800-30L (Sat-SuS).

Please check one of the boxes below indicating your choice.

You wish to exercise your retreat rights _____ *[handwritten]*

You wish not to exercise your retreat rights

Please return no later than May 21, 2014 at noon with your decision.

Any question please you can reach me at (202) 636-1247.


Sincerely,

*Christopher Cole*

Christopher Cole
Supervisor, Customer Service Support
Washington, DC

cc:  Hr Manager
      *District Complement Coordinator*
      Local Bid Management File
      Customer Service Support





**UNITED STATES**
**POSTAL SERVICE**

June 4, 2014

Howard Tyson EIN #01016038
MAIL HANDLER
WASHINGTON DC MAIN OFFICE
900 BRENTWOOD RD NE
WASHINGTON DC 20066

SUBJECT: Employee Notification -- Rescind Offer of Retreat Rights

This is to advise you that letter issued dated May 19, 2014 to offer you retreat rights at Government Mails is rescinded due to Management rights to revert the position.

I regret any inconvenience this may have caused you. If you have any questions, please contact Christopher Cole at 202-636-1247.

Gerald Roane
Postmaster



**UNITED STATES**
**POSTAL SERVICE**

May 29, 2014

Lamar Grigsby
Branch President Mail Handlers
Washington DC 20018

Ref: Notification to Revert – Mail Handler Positions

Dear Mr. Grigsby

This is to notify you the intent to revert the following duty assignment(s) effective COB 06/08/2014.

*JOB ID: 95298122* 2315-01XX MAIL HANDLER
GOVERNMENT MAILS
SECTION GOVERNMENT MAILS WORK SCHEDULE: 1130-2000-30L-SAT-SU
VACATED BY: JOHN GIBSON ON DATE: 01/31/2014

The reason for this action is the change in mail volume and retail revenue which has resulted in the need to identify staffing efficiencies and changes at the Government Mails. As a result, we have identified that the listed position is no longer necessary to the efficient operational needs of the Postal Service.

If you have any questions regarding this notification, please contact me at (202) 636-1247

Sincerely,

Christopher Cole
Customer Service Support

cc   Postmaster
     Area Manager
     Labor Relation
     Union
     Local Bid Management File

## Article 12.3

### Section 12.3 Principles of Posting

I3    When management places automatic equipment in an office and an employee is assigned to operate the equipment, the time the employee spends on this job before it is ranked established shall be counted as incumbency in the position for the purpose of being upgraded or assigned.

A    To insure a more efficient and stable work force, an employee may be designated a successful bidder no more than nine (9) times during the duration of this Agreement unless such bid:

A1    is to a job in a higher wage level;

A2    is due to elimination or reposting of the employee's duty assignment; or

A3    enables an employee to become assigned to a station closer to the employee's place of residence. It is the responsibility of the employee bidding "closer to home," management that the employee's bidder "closer to home."

B    In the Mail Handle Craft, Vacant Craft Duty Assignments Will Be Posted for bid as follows:

B1    Full-time and part-time fixed schedule employees will only bid for vacant assignments within their own category.

B2    Full-time employees may apply for residual vacancies in the part-time fixed schedule category, and selection from such applicants shall be based on senior employee meeting the qualification standards.

I3    All vacant or newly established craft duty assignments shall be posted for vacant established employees eligible to bid within 10 days. A determination whether to bid within 10 days after reverted. If a vacant duty assignment is made that the position is not to be within 30 days, the vacant duty assignment has not been posted installation head or the installation head's discretion shall hold an audition of non posted reasons the position is being the Union in writing, of ten days such position will remain vacant. If the va- cant assignment is reverted, a notice shall be posted within 10 days of the action taken and the anticipated ti- low. In addition of the notice shall be, the reasons there- for, a copy of the notice shall be provided to the appropriate Union representative.

*[Sect Letter, page 145]*

11

---

change in work days shall not b been posted.

B5    The determination of what of duties, or principal assign- ment to be reposted shall, this Agreement with local im,

B6    No assignment will be posted because time unless the change exceeds an hour, starting time that exceeds an hour, bid, except when there is one (1) hour sha, time of more than one hour and change, hours, the incumbent shall have to and inct, new reporting time. If the incumbent to ac- new reporting time, the assignment will be posted for b, reposting:

B7a    A 50% change in duties (actual duties performed).

B7b    A change in principal assignment area which requires reporting to a different physical location, i.e., station, branch, facility annex, etc., except the incumbent shall have the option to accept the new assignment.

B8    Vacant full-time Mail Handler assignments shall be posted for a period of ten (10) days.

B9    The installation head shall establish a method for handling multiple bidding on duty assignments which are simultane- ously posted.

B10    An employee may withdraw a bid on a posted assignment, in writing or via the telephone or computerized bidding pro- cess, at any time before the closing time (hour and date) of the posting. Such withdrawal, to be official, shall be date- stamped or processed by telephone or computer with con- firmation.

B11    An unassigned full-time employee may bid on full-time di- ly assignments posted for bid by employees in the Mail Handler craft. An unassigned full-time employee in the Mail assigned to any vacant duty assignments. Such employee may be shall be given a choice if more than one vacant assignment is available. When the number of unassigned full-time em- ployees exceeds the number of residual vacant duty as- signments, the senior unassigned full-time em- remain unassigned provided that an unassigned regular as- signed unassigned provided that an unassigned regular who making this election is not the only unassigned regular who



**UNITED STATES**
**POSTAL SERVICE**

## Litigation Hold Notice

This matter concerns the following:
Howard Tyson
EEO Case No. 1K-206-0049-14
The Complainant alleged discrimination based on Religion when, on June 16, 2014 he was
instructed not to report to his new bid position.

I understand that I have been identified as an individual likely to have materials -- information,
documents, or physical objects -- relevant to this matter. I further understand that under the law,
the Postal Service, and its employees, have an obligation to preserve all evidence that is
potentially relevant to this complaint, including all documents, recordings, electronically stored
information, and physical objects. This obligation extends to materials that presently exist, as well
as to all potentially relevant materials that are created in the future. My signature on this
document indicates that I have complied with the obligations set out below.

**Search.** I have searched and identified all sources of information potentially related to this
dispute, including: hard copy files, desktop/laptop computers, network storage drives, removable
storage devices (e.g. CD/DVDs, USB Flash drives, memory sticks), Internet storage locations,
and personal digital assistants (PDAs).

**Save.** I have saved all materials that are potentially relevant to this complaint, including my
personal notes and email. Where I have found a hard copy and electronic copy of the same
document, I have preserved both versions. Either by myself, or with the assistance of Information
Technology staff, I have saved e-mail and any other electronically stored information, and have
taken steps to ensure that the files I have identified are preserved against automatic deletion.

**Preserve/Segregate.** I have retained all pertinent hard copy and other non-electronic materials in
their present locations, have labeled them to avoid inadvertent destruction, and have stored them
in a condition so that they can be accessed quickly for this case. I have also moved all e-mails
and other electronically stored information into separate electronic folders that I have designated
for this matter. The electronic folders are on the Postal Service data network, not in Outlook or on
my computer's hard drive. I have moved my potentially relevant e-mails to these folders in order
to avoid the automatic deletion of e-mail in my Outlook account.

I will preserve, for one year from the date that I sign this Notice, all potentially relevant information
that presently exists, as well as potentially relevant materials created in the future, unless I am
notified by a representative of the Law Department that I am no longer required to save this
information, or that I must save it for a longer period.

_____
Signature

_____
Print Name
Gerald Keane

_____
Title
Postmaster, Washington DC

_____
Date
8/26/14

444.219   Exclusions Not Creditable

The exclusions listed above in subsection 444.218(a), (f), (g), and (i) are not creditable toward FLSA overtime compensation that is due.

Because certain pay premiums are included in the calculation of the FLSA overtime rate, an employee may receive a higher rate of pay for FLSA overtime than for postal overtime.

Out-of-Schedule Premium:  Section 8.4B refers to the out-of-schedule premium provisions contained in Section 434.6 of the ELM.  Section 434.6 provides that out-of-schedule premium is paid at the postal overtime rate to eligible full-time bargaining unit employees for time worked outside of, and instead of, their regularly scheduled work day or work week when employees work on a temporary schedule at the request of management.  Only full-time employees may receive out-of-schedule pay.

However, an employee does not receive out-of-schedule pay when the employee's schedule is changed to provide limited or light duty, when the employee is attending a recognized training session that is a planned, prepared, and coordinated program or course, when the employee is allowed to make up time due to tardiness in reporting for duty, or when the assignment is made to accommodate a request for intermittent leave or a reduced work schedule for family care or the serious health problem of the employee.  Further exceptions are outlined in ELM Chapter 4, Section 434.622.

In a National Award, Arbitrator Gamser ruled that the exclusion of limited or light duty assignments from the requirement to pay out-of-schedule premium does not give management the unbridled right to make such an out-of-schedule



*Rules for out-of-schedule* [illegible] ...

[several faded illegible lines]

- If notice of a temporary change is given to an employee by Wednesday of the preceding service week, even if this change is revised later, management has the right to limit the employee's work hours to the hours of the revised schedule and out-of-schedule premium is paid for those hours worked outside of, and instead of, his or her regular schedule.

- If notice of a temporary schedule change is *not* given to the employee by Wednesday of the preceding service week, the employee is entitled to work his/her regular schedule or receive pay in-lieu thereof, and the out-of-schedule provisions do not apply. In this case any hours worked in addition to the employee's regular schedule are not considered out-of-schedule premium hours. Instead, they are paid as overtime hours worked in excess of eight (8) hours per service day or forty (40) hours per service week.

Out-of-schedule premium hours cannot exceed the unworked portion of the employee's regular schedule. If employees work their full regular schedule, then any additional hours worked are not instead of their regular schedule and are not considered as out-of-schedule premium hours. Any hours worked which result in paid hours in excess of eight (8) hours per service day or forty (40) hours per service week are paid at the overtime rate.

## Out-of Schedule Premium – Daily Schedule Examples

| Example Number | Hours Worked | Total Hours Worked | Out-of-Schedule Premium Hours | Straight Time Hours | Overtime Hours |
|---|---|---|---|---|---|
| 1* | 8:00 am-4:30pm | 8 | 0 | 8 | 0 |
| 2 | 6:00 am-2:30pm | 8 | 2 | 6 | 0 |
| 3 | 6:00 am-3:30pm | 9 | 1 | 7 | 1 |

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OG COLUMBIA

CASE NO. 16-01678-KBJ

HOWARD T. TYSON SR.

PLAINTIFF

V

MEGAN  BRENNEN, POSTMASTER
GENERAL

SWORN AFFIDAVIT OF HOWARD T.TYSON SR.

COME NOW HOWARD T. TYSON, BEING  DULY SWORN,
STATES:

1.

THAT I AM THE AFFIANT AND I AM COPENTENT TO TESTIFY
IN THIS MATTER.

2.

ON OR ABOUT JUNE 9TH, 2010, WHILE EMPLOYED AT THE
GOVERNMENT MAIL FACILITY, V STREET N.E. WASHINGTON DC
I WAS APPROACHED BY PLANT MANAGER HARRISTON, AND TOLD
TO TURN MY GOSPEL MUSIC DOWN, WHICH WAS PLAYING ON MY
RADIO. I INFORMED HIM THAT HE WAS GIVEN AN OFFICE TO THE
REAR OF THE BUILDING, AWAY FROM ANY DISTURBANCE ON THE
FLOOR.

3.

PLANT MANAGER HARRISTON APPROACHED ME ABOUT MY
GOSPEL MUSIC ON SEVERAL OCCASIONS.  I ALSO INFORMED HIM
THAT HE DOESN'T SAY ANYTHING TO THE OTHER EMPLOYEES
WHO PLAYS THEIR SECULAR MUSIC, ALSO IN MY WORK AREA.

.4

AFTER SEVERAL CONFRONTATIONS BETWEEN PLAINTIFF
AND PLANT MANAGER HARRISTON, OVER THE PLAYING OF THE
GOSPEL MUSIC, MY JOB WAS ABOLISHED ON OR ABOUT, APRIL
THE 11TH, 2011. I WAS TRANSFERRED TO THE JOSEPH CURSEE AND
THOMAS MORRIS P&DC, TO CONTINUE MEMPLOYMENT.

5.

A NEW MAIL HANDLER POSITION WAS POSTED ON MAY 12TH

2014. THAT SHOULD HAVE NOT BEEN POSTED.

6.

THE REASON THIS POSITION SHOULD NOT HAVE BEEN POSTED, IS BECAUSE, THE JOB BELONED TO THE PLAINTIFF, DUE TO IT BEING A RETREATED POSITION.

.7

A RETREATED POSITION IS A NEW JOB OPPENING, RESIGNED FOR AN EMPLOYEE, WHO HAD LEFT THE LOCATION, WITH A AGREEMENT.

.8

THAT AGREEMENT IS BETWEEN MANAGEMENT AND THE SENIOR EMPLOYEE WHO LEFT THAT FACILITY.

.9

THE PLAINTIFF WAS THAT SENIOR EMPLOYEE

.10

WHEN PLAINTIFF DISCOVERED THE POSITION WAS POSTED, HE CONFERED WITH THESENIOR UNION REPRESENTATIVE, LAMAR GRIGSPY.

.11

SUBSIQUENTLY, MR. GRIGSPY INFORMED PLAINTIFF, THAT THE JOB WAS HIS.

.12

ON , MAY 19TH, , 2014 PLAINTIFF REPORTED TO HIS JOB, AND
WAS SUBSIQUENTLY GIVEN A LETTER INDICATION,THE
OFFER OF RETREAT, WHICH HE ACCEPTED.

.13

ON WENESDAY, MAY 21ST, 2014, PLAINTIFF WAS CALLED TO
PLANT MANAGER OFFICE, YOLANDA SANDERS. WHO INFORMED
HIM, THE POSITION WAS RECENDED.

.14

PLAINTIFF ASKED MANAGER SANDERS IF SHE HAD
DOCUMENTATION  INDICATING THAT THE JOB WAS RESENDED.

.15

MANAGER SANDERS MENTIONED THAT THE UNION WOULD
HAVE A LETTER INDICATING THAT THE RETREATED POSITION
WAS RECENDED.

.16

ON MAY 21ST, 2014, PLAINTIFF CONTACTED UNION
REPRESENTATIVE,  LAMAR GRIGSPY, WHO ADVISED HIM, THAT
HE DID NOT HAVE  A LETTER INDICATING THE POSITION HAD
BEEN RECENDED.

.17

ON MAY 21ST, PLAINTIFF CALLED MAIN UNION OFFICE

LOCATED AT 2222 CONNECTICUT AVE, N.W. WASHINGTON D.C.

AND SPOKE TO MR. DICK.

.18

PLAINTIFF INFORMED MR. DICK, THAT MANAGER SANDERS

INFORMED HIM, THAT THE RETREATED POSITION WAS

RESENDED AND THAT UNION REPRESENTATIVE, LAMAR,

GRIGSPY, WOULD HAVE A COPY OF A LETTER INDICATING

SUCH WHICH HE DID NOT.

.19

MR. DICK ADVISED PLAINTIFF, THAT IF THE UNION

REPRESENTATIVE DID NOT HAVE A LETTER INDICATING THAT

THE POSITION WAS REESENDED, TO REPORT TO THE RETREATED

POSITION.

.20

PLAINTIFF RETURNED TO WORK ON MAY 22ND, 2014 AND  WAS

NOT PROVIDED ANY LETTER FROM SUPERVISOR OR PLANT

MANAGERS, INDICATING THAT THE RETREATED POSITION WAS

INDEED, RECENDED.

21

ON JUNE 4TH 2014 PLAINTIFF WAS CALLED TO THE OFFICE

OF MANAGER SANDERS. WHILE IN HER OFFICE SHE ATTEMPTED

TO GIVE PLAINTIFF AN UNSIGNED LETTER REPRESENTING THAT

THE RETREATED POSITION WAS RESENDEDE.

22

PLAINTIFF NOTICED THAT THE LETTER WAS UNSIGNED, AND

QUESTIONED MANAGER SANDERS ABOUT THE LACK OF POST

MASTER, GERALD ROANE'S SIGNATURE.

23

AFTER BEING QUESTION BY THE PLAINTIFF, ABOUT THE

LACK OF POST MASTERS GERALD ROANE SIGNATURE,

MANAGERS SANDERS SHRUGGED HER SHOULDERS,  AND SHOWED

PLAINTIFF HER PALMS.

24

PLAINTIFF SUBSEQUENTLY, PICKED UP THE LETTER AND

PROCEEDED TO THE UNION OFFICE.

25

PLAINTIFF PROCEEDED TO THE UNION OFFICE, TO SHOW

UNION REPRESENTITIVE, THAT THE LETTER WAS NOT

AUTHENTIC. HOWEVER HIS COMPLAINT WENT UNANSWERED.

26

ON JUNE <sup>TH</sup> 2014, PLAINTIFF APPROACHED POST MASTER

GERALD ROANE AND ASKED HIM, WHY DID HE RESEND THE

RETREATED BID. HIS ANSWER WAS THAT, HE DID NOT RESEND

PLAINTIFF'S RETREATED POSITION.


27

PLAINTIFF INFORMED, POST MASTER GERALD ROANE, THE

HE HAD RECEIVED A LETTER FROM MANAGER SANDERS,

INDICATING, THAT HIS RETREATED POSITION HAD BEEN

RENSENDED, BY HIM.

28

POST MASTER ROANE, REQUESTED THAT PLAINTIFF

DELIVER A COPY OF THE LETTER TO HIS OFFICE.

29

ON OR ABOUT JUNE 8TH 2014, PLAINTIFF DELIVERED A COPY

OF SAID LETTER TO POST MASTER ROANE'S OFFICE.

30

ON JUNE 13TH 2014 POST MASTER ROANE, AFTER READING A

COPY OF THE LETTER, ADVISED PLAINTIFF TO REPORT TO HIS

RETREATED POAST AT GOVERNMENT MAILS, DUE TO THE

LETTER FROM HIS OFFICE, BEEING IN QUESTION.

31

ON JUNE 16TH 2014, PLAINTIFF, UNDER ADVISEMENT, OF

POST MASTER ROANE, REPORTED TO HIS RETREATED POST AT

3001 V. STREET N.E, WASHINGTON D.C.

32

SUBSEQUENTLY AFTER ARRIVING TO THE RETREATED

POST, MANAGER HARRISTON " YELD TO PLAINTIFF, CAN

I HELP YOU ? " .

33

PLAINTIFF RESPONDED TO MANAGER HARRISTON, BY

TELLING HIM, THAT THEIR CONVERSATION SHOULD NOT BE

BEFORE THE OTHER EMPLOYEES, THAT WERE STANDING IN HIS

PRESENCE, BUT SHOULD BE DISCUSSED PRIVATELY IN HIS

OFFICE.

34

MANAGER HARRISTON EXCUSED HIMSELF FROM THE

OTHER EMPLOYEES, AND MOTIONED PLAINTIFF TO FOLLOW HIM

TO HIS OFFICE.

35

AFTER ARRIVING TO THE OFFICE, MANAGER HARRISTON, TOLD

PLAINTIFF THAT HE HAD NO POSITION FOR HIM.

36

PLAINTIFF REPLIED THAT, DUE TO A CERTAIN LETTER BEING IN QUESTION,  HE REPORTED TO THE POST, AS INSTRUCTED BY POST MASTER ROAN.

37.

AFTER HEARING THAT, MANAGER HARRISTON,  DROPPED HIS HEAD, AND TOLD PLAINTIFF TO REPORT TO THE GROUP LEADER SO HE COULD BE ASSIGNED A POSITION.

38.

PLAINTIFF RESPONDED, THAT HE WAS UNDER LIMITED DUTY, AND THAT BY POSTAL POLICY, MANAGEMENT IS RESPONCIBLE FOR ASSIGNING HIM.

39

PLANT MANAGER HARRISTON, RESPONDED  BY ADVISING PLAINTIFF THAT, THE GROUP LEADER CAN CARRY OUT THAT RESPONCIBILITY.

40

PLAINTIFF REPORTED TO GROUP LEADER, JANE DOE, AND WAS ASSIGNED TO A DUTY STATION.

41

AFTER WORKING APPROXIMATELY THREE HOURS, PLAINTIFF

WAS CALLED TO PLANT MANAGER HARRISTON'S OFFICE.

42

AFTER ARRIVING AT THE OFFICE, PLANT MANAGER

HARRISTON  TOLD PLAINTIFF THAT, "THEY SAID FOR PLAINTIFF

TO REPORT BACK TO THE PLANT.

43

PLAINTIFF ASKED PLANT MANAGER HARRISTON, WHO IS

THE THEY HE IS TALKING ABOUT.

44

PLANT MANAGER HARRISTON RESPONDED TO PLAINTIFF

BY STATING " I AM THE PLANT MANGER AND I'M INSTRUCTING

YOU TO RETURN BACK TO THE PLANT". AND AFTER HEARING

THAT , PLAINTIFF COMPLIED WITH THE ORDER.

45

PLANTIFF ARRIVED AT THE PLANT AT APPROXITMATELY

3:30 THAT AFTERNOON. UNDER NO DURESS FROM MANAGEMENT

AND, BEGAN TO WORK.

46

SUBSEQUENTLY, AFTER WORKING AT THE PLANT FOR

APPROXITMATELY FOUR DAYS, PLAINTIF FILLED A PRE-

COMPLAINT WITH THE EEOC , 1K-206-0049-14.

47

THE ELM, OR THE EMPLOYEE AND LABOR RELATION

MANUAL, ISSUE 26, SEPTEMBER 2013, SECTION 666.12, PROHIBITS

DISCRIMINATION. B. INDIVIDUAL STATUS, NO PERSON MAY BE

DISCRIMINATED AGAINST BECAUSE OF RACE, COLOR, RELIGION

SEX, AGE,NATIONAL ORIGIN, DISABILITY, REPRISAL BASED ON

PROTECTED ACTIVITY, MARITAL OR PARENTAL STATUS, OR

SEXUAL ORIENTATION IN CONNECTION WITH EXAMINATION,

APPOINTMENT, REAPPOINTMENT, REINSTATEMENT,

REEMPLOYMENT, PROMOTION, TRANSFER, DEMOTION,

REMOVAL, OR RETIREMENT, AS SO THE UNITED STATES

CONTITUTION'S 5TH AND 14TH AMENDMENTS.

48

IT IS PLAINTIFF BELIEF THAT PLANT MANAGER HARRISTON,

DID NOT WANT  HOWARD T. TYSON SR. EMPLOYED AT THE

GOVERNMENT MAILS FACILITY, BECAUSED WHILE EMPLOYED

THERE PREVIOUSLY, TYSON WAS PLAYING HIS GOSPEL MUSIC

AND EXERCISING HIS RELIGIOUS RIGHTS AS A CHRISTIAN.

49

FURTHER THE ACTIONS, CONDUCT OF PLANT MANAGER

HARRISTON, VIOLATED PLAINTIFF'S CLEARLY ESTABLISHED
FEDERAL CONSTITUTIONAL RIGHTS.

.50

IT IS PLAINTIFF'S BELIEF, THAT PLANT MANAGER HARRISTON,
NEW AND UNDERSTOOD, THAT HOWARD T. TYSON, IS A
CHRISTIAN, AND LIVES AS SUCH, AND DID NOT WANT PLAINTIFF
BACK AT THE GOVERNMENT MAILS FACILITY.

.51

PLANT MANAGER HARRISTON KNEW OR SHOULD HAVE
KNOWN, THAT IT IS ILLIGAL AND UNCONSTITUTIONAL, TO
DISCRIMINATE ON THE BASIS OF RELIGION.

.52

THE FALSE LETTER, ALEDGEDLY FROM POST MASTER
GERALD ROANE, RESENDING THE RETREATED POSITION, WAS
A DIRECT RESULT OF PLANT MANAGER HARRISTON'S
INTERVENTION, DUE TO THIS FACT, HE DID NOT WANT PLAINTIFF
THERE, EXERCISING HIS RELIGIOUS BELIEF'S.

.53

THE LETTER FROM CHRISTOPHER COLES, DATED MAY 29TH, 2014, WAS CREATED FOR THE PURPOSE OF SUPPRESSING THE FASCTS THAT IT WAS PLANT MANAGER HARRISTON THAT DID NOT WANT PLAINTIFF TO RETURN TO THE GOVERNMENT MAILS FACILITY.

.54

BECAUSE THE DEFENDANT FAILED TO GIVE AFFIANT THE RETREATED POSITION "OUT OF SCHEDULED PAY ENSUED".

.55

OUT OF SCHEDULED PAY IS MANDATORY IF THE FACILITY FAILED TO FACILITATE TO THE SENIOR EMPLOYEE THEIR BIDDED OR RETREATED POSITION AT THE PRESCRIBED TIME.

.56

AFFIANT SUFFERED THE LOST OF APPROXIMATELY $66,000 PLUS DOLLARS, DUE TO THE FAILURE OF THE DEFENDANT TO FACILITATE THE RETREATED POSITION AT THE PRESCRIBED TIME.

.57

DUE TO THE FAILURE OF THE DEFENDANT TO FACILITATE THE RETREATED POSITION, THERE WAS A LOST OF OVERTIME

PAY WHICH WOULD AMOUT TO APROXITMATELY $25,000, OVER

A PERIOD OF ONE YEAR.


AFFIANT SAYETH NOT.

SWORN TOO UNDER PENALTY OF PURGERY.

HOWARD T. TYSON SR.
3/11/2017