# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HOWARD T. TYSON, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 16-1678 (KBJ) |
| v. | ) | |
| | ) | |
| MEGAN J. BRENNAN, Postmaster General, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JESSIE K. LIU
D.C. BAR # 472845
United States Attorney

DANIEL F. VAN HORN
D.C. BAR #924092
Chief, Civil Division

PAUL CIRINO
N.Y. BAR #2777464
Assistant United States Attorney
Civil Division
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C.  20530
Phone: (202) 252-2529
Fax: (202) 252-2599
paul.cirino@usdoj.gov

*Counsel for Defendants*

Dated:  June 28, 2019

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................................ii

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND..........................................................................................................2

I.      PLAINTIFF'S EMPLOYMENT AT THE GOVERNMENT MAILS FACILITY ..........2

II.     PLAINTIFF'S REASSIGNMENT TO THE CURSEEN-MORRIS FACILITY ..............4

III.    PLAINTIFF'S EFFORTS TO RETURN TO THE GOVERNMENT
MAILS FACILITY ...................................................................................................5

        A.      Defendant Erroneously Posts a Job Opening for a Mail Handler. ........................5

        B.      Defendant Eliminates the Position That Was Erroneously Posted. .....................6

        C.      Plaintiff Presents Himself at the Government Mails Facility. . .............................7

PROCEDURAL HISTORY..............................................................................................................7

STANDARDS OF REVIEW ..........................................................................................................8

I.      MOTIONS FOR SUMMARY JUDGMENT ..................................................................8

II.     TITLE VII CLAIMS BASED ON DISPARATE TREATMENT...................................10

ARGUMENT .................................................................................................................................12

I.      PLAINTIFF DID NOT SUFFER A MATERIALLY ADVERSE
EMPLOYMENT ACTION. .........................................................................................12

II.     THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR
OF DEFENDANT AS TO PLAINTIFF'S DISCRIMINATION CLAIM. ...................14

        A.      Undisputed Evidence Supports Defendant's Legitimate, Non-Discriminatory
Reason for Eliminating the Government Mails Position .....................................15

        B.      Plaintiff Cannot Show That the Position Was Eliminated
Because of His Religion .....................................................................................16

III.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF
DEFENDANT AS TO PLAINTIFF'S COMPENSATORY DAMAGES CLAIM. ......19

IV.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF
DEFENDANT AS TO PLAINTIFF'S PUNITIVE DAMAGES CLAIM. ...................21

CONCLUSION …………………………….......…………………………………….... 22

i

# TABLE OF AUTHORITES

**Cases**                                                                    Page(s)

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................. 8, 9

*Baird v. Gotbaum*,
   662 F.3d 1246 (D.C. Cir. 2011) .................................................................. 12

*Baltimore v. B.F. Goodrich Co.*,
   545 A.2d 1228 (D.C. 1988).......................................................................... 21

*Barbour v. Browner*,
   181 F.3d 1342 (D.C. Cir. 1999) .................................................................. 10

*Barnette v. Chertoff*,
   453 F.3d 513 (D.C. Cir. 2005) .................................................................... 10

*Bonieskie v. Mukasey*,
   540 F. Supp. 2d 190 (D.D.C. 2008) ....................................................... 9, 10

*Brady v. Office of Sergeant at Arms*,
   520 F.3d 490 (D.C. Cir. 2008) .................................................................... 11

*Bridgeforth v. Jewell*,
   721 F.2d 661 (D.C. Cir. 2013) .................................................................... 12

*Brown v. Brody*,
   199 F.3d 446 (D.C. Cir. 1999) .................................................................... 10

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................. 8, 9

*Czekalski v. Peters*,
   475 F.3d 360 (D.C. Cir. 2007) .................................................................... 11

*Daniels v. District of Columbia*,
   15 F. Supp. 3d 62 (D.D.C. 2014) ........................................................... 20-21

*David v. District of Columbia*,
   246 F. Supp. 3d 647 (D.D.C. 2017) .............................................................. 9

*Diamond v. Atwood*,
   43 F.3d 1538 (D.C. Cir. 1995) ...................................................................... 8

*Douglas v. Green*,
   411 U.S. 792 (1973) ................................................................................... 10

*Douglas v. Preston*,
    559 F.3d 549 (D.C. Cir. 2009) ........................................................................... 12

*Figueroa v. Pompeo*,
    923 F.3d 1078 (D.C. Cir. May 10, 2019) ........................................................... 11

*Fischbach v. D.C. Dep't of Corrs.*,
    86 F.3d 1180 (D.C. Cir. 1996) ........................................................................... 10

*Halcomb v. Woods*,
    610 F. Supp. 2d 77 (D.D.C. 2009) ..................................................................... 21

*Lindsey v. Rice*,
    524 F. Supp. 2d 55 (D.D.C. 2007) ....................................................................... 9

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ............................................................................................. 9

*McDonnell Douglas v. Green*,
    411 U.S. 792 (1973) ............................................................................... 10-11, 14

*McAlister v. Potter*,
    733 F. Supp. 2d 134 (D.D.C. 2010) ................................................................... 21

*Potter v. District of Columbia*,
    558 F.3d 542 (D.C. Cir. 2009) ............................................................................. 9

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000) ........................................................................................... 11

*Rudder v. Williams*,
    Civ. No. 19-2175 (RJL), 2016 WL 10999915 (D.D.C. June 9, 2016) ................ 21

*Texas Dep't of Cmty. Affairs v. Burdine*,
    450 U.S. 248 (1981) ........................................................................................... 11

**Statutes**

42 U.S.C. § 1981a(b)(1) ........................................................................................... 21

42 U.S.C. § 2000e et seq. ........................................................................................... 8

**Rules**

Fed. R. Civ. P. 26(b)(2)(A) ............................................................................... 19, 20

Fed. R. Civ. P. 56(a) .................................................................................................. 8

Fed. R. Civ. P. 56(e) .................................................................................................. 8

Fed. R. Evid. 702 ..................................................................................................... 20

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HOWARD T. TYSON, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MEGAN J. BRENNAN, Postmaster General, | ) |
| | ) |
| Defendant. | ) |

Civil Action No. 16-1678 (KBJ)

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Megan J. Brennan, in her official capacity as Postmaster General, respectfully submits this Memorandum of Law in Support of Defendant's Motion for Summary Judgment.

This case involves Plaintiff's claim, brought under Title VII of the Civil Rights Act of 1964, alleging that Defendant discriminated against him based on his religion when the United States Postal Service eliminated a Mail Handler position that was deemed to be no longer necessary. Because there are no genuine issues of material fact and Defendant is entitled to judgment as a matter of law, the Court should grant this motion and enter summary judgment in Defendant's favor.

**PRELIMINARY STATEMENT**

In 2014, Defendant mistakenly posted a job for a Mail Handler at the Government Mails Facility in Northeast Washington. If the job had been available, Plaintiff would have had the right to fill the position because he had been reassigned from a similar job at the same facility three years earlier. But the position was no longer necessary in light of the reduction in mail volume and retail revenue that has resulted from the increased use of electronic mail over the

1

past decade.  The Postal Service corrected its mistake and eliminated the position, which has never been filled.

In this case, Plaintiff is advancing a speculative conspiracy theory to explain what happened.  He alleges that before 2011, while he worked at Government Mails, the Plant Manager did not like him because he played gospel music too loudly at work and attempted to anoint the Plant Manager with holy oil.  When Defendant explained to Plaintiff that he could not transfer to Government Mails in 2014 because the position was eliminated, Plaintiff assumed two things:  (1) that the Plant Manager had blocked the move and (2) that the Plant Manager had done so because of what Plaintiff perceived as a grudge based on Plaintiff's religion.

The undisputed facts tell a different story:  The Postal Service erroneously posted the job and indicated to Plaintiff that he could accept the position.  A week or so later, the agency corrected the mistake because it did not need Mail Handlers at the Government Mails Facility. As a result, Plaintiff remained in his existing Mail Handler position and suffered no adverse consequence.  Nobody ever filled the position.  The Plant Manager had no authority to eliminate the position and had nothing to do with the decision to eliminate the job.

For the following reasons, the Court should grant this motion and enter summary judgment in favor of Defendant.

## FACTUAL BACKGROUND

## I.    PLAINTIFF'S EMPLOYMENT AT THE GOVERNMENT MAILS FACILITY

Plaintiff is a retired former Mail Handler employed by the United States Postal Service between November 1992 and September 2015.  Ramos Decl.[1] ¶¶ 4-10.  In January 2010,

---

[1]  Citations to "Ramos Decl." refer to the Declaration of Ronald A. Ramos, dated June 28, 2019, and submitted herewith.

Plaintiff began working as a Mail Handler at the Government Mails Facility at 3300 V Street in

Northeast Washington.  *Id.* ¶¶ 5-6.  At the time, his second-level supervisor was Cecil Harriston,

who was also the Plant Manager.  Saliba Decl.[2] Exhibit 9 at 1-2.

As Plaintiff tells it, the relationship between the two men was contentious, even though

Plaintiff did not report directly to Mr. Harriston.  Plaintiff believed that Mr. Harriston did not

like him because Plaintiff asked Mr. Harriston if he could anoint him with holy oil; in response,

Mr. Harriston "got an attitude."  *Id.* Exhibit 1 at 3.

While working in close proximity to Mr. Harriston's office, Plaintiff claims that he

played gospel music on a radio while he was working.  According to Plaintiff, this music

disturbed Mr. Harriston, who requested that Plaintiff turn down the music.  *Id.* Exhibit 2.

According to Plaintiff, Mr. Harriston objected only to the playing of gospel music, not other

kinds of music.  *Id.* Exhibit 3 at 4. ("[W]hen I played gospel music, he made it a habit to come

and tell me that my music was [too] loud.  While those who played worldly music [were]

exonerated.").  Plaintiff's former co-workers also claim that Mr. Harriston "bothered" Plaintiff

when he was playing Christian gospel music and singing along with the music, and that Mr.

Harriston did not bother other employees about their non-Christian music.  *See* Exhibits A, B

(declarations produced by Plaintiff in discovery).  Plaintiff further contends that Mr. Harriston

would not allow Plaintiff or any employees to talk about church or Christianity in his presence.

Exhibit B.

In response to Mr. Harriston's requests to lower the volume, Plaintiff talked back to the

Plant Manager, explaining that Mr. Harriston was intruding upon the workspace for the clerks

---

[2]  Citations to "Saliba Decl." refer to the Declaration of Richard G. Saliba, dated June 27, 2019, and submitted herewith.

and the mail handlers.  Saliba Decl. Exhibit 2 ("I mentioned to [Mr. Harriston] that, the post office gave him his own personal office, so that no one could disturb him, while he did his work in private.").

During this time period, Mail Handlers were being reassigned to other facilities in the region because declining mail volumes resulted in insufficient work to justify their positions. Cole Decl.[3] ¶ 6.  On March 25, 2011, Plaintiff was notified that he would "become excess to the needs of your section" and that he would be involuntarily reassigned effective April 2, 2011. Exhibit C.  The letter advised Plaintiff that he would "retain the right to retreat to the section upon the occurrence of the first residual vacancy in the salary level after employees in the section have completed bidding.  Failure to bid for the first available vacancy will end such retreat right." *Id.*

## II.     PLAINTIFF'S REASSIGNMENT TO THE CURSEEN-MORRIS FACILITY

In or about March 2011, Plaintiff was reassigned to the Curseen-Morris Processing and Distribution Center ("Curseen-Morris") at 900 Brentwood Road in Northeast Washington, where he worked as a Mail Handler.  According to Plaintiff, the Government Mails Facility is a better place to work because he would be able to earn more money working overtime.  Pl. Depo.[4] at 83-84.  In addition, Plaintiff considers Curseen-Morris to contain heavy equipment, such as dollies, that have resulted in injuries to him in the past.  *Id.* at 79.  Finally, Plaintiff asserts that certain of his Curseen-Morris colleagues have caused that work environment to be stressful and negative.  *Id.* at 79-80.

---

[3]  Citations to "Cole Decl." refer to the Declaration of Christopher B. Cole, dated June 27, 2019, and submitted herewith.

[4]  Citations to "Pl. Depo." refer to the transcript of Plaintiff's deposition, taken May 1, 2019. The relevant excerpts are submitted herewith as Exhibit D.

In or about October 2012, Plaintiff was awarded a Group Leader Mail Handler position. Ramos Decl. ¶ 5.  On October 17, 2012, Plaintiff was injured while transferring and pulling out mail from a dolly.  Depo at 19.  Three days later, Plaintiff filed a claim with the Department of Labor's Office of Workers' Compensation Programs for a traumatic injury, described as "a lumbar sprain, an aggravation of lumbar stenosis, and a displacement of a lumbar intervertebral disc without myelopathy."  Exhibit E at 1.  Plaintiff received medical benefits as well as wage loss compensation payments for his inability to work.  On September 20, 2013, Plaintiff had surgery to improve his lower back.  *Id.*  On December 27, 2013, Mr. Tyson returned to work as a Group Leader Mail Handler, but was given "limited duty" work.  Ramos Decl. ¶ 9.

## III.   PLAINTIFF'S EFFORTS TO RETURN TO THE GOVERNMENT MAILS FACILITY

### A.      Defendant Erroneously Posts a Job Opening for a Mail Handler.

In May 2014, Christopher Cole, the Customer Services Support Supervisor, became aware that a Mail Handler position had been vacated at the Government Mails Facility.  Cole Decl. ¶ 9.  Mr. Cole assumed that the vacancy needed to be filled, so he posted a job announcement to fill the position.  Cole Decl. ¶ 9; Saliba Decl. Exhibit 4.  On or about May 19, 2014, Mr. Cole believed that Plaintiff had retreat rights to fill the position, in accordance with the March 25, 2011, letter, and so he issued an Offer of Retreat Rights letter to Plaintiff for the vacant position.  Cole Decl. ¶ 9.  The letter asked Plaintiff whether he wished to exercise his retreat rights to fill the position.  Saliba Decl. Exhibit 5.  Plaintiff returned the letter advising that he wished to exercise his retreat rights.  *Id.* ¶ 10; Saliba Decl. Exhibit 5.

About one week later, Mr. Cole attended a routine management meeting in which he learned that he should not have issued the Offer of Retreat Rights to Plaintiff because management had chosen to "revert" – or eliminate – the vacant position.  Cole Decl. ¶ 11.  At the

meeting, Mr. Cole also learned that no Mail Handlers would be allowed to exercise their retreat

rights from the Curseen-Morris to the Government Mails Facility (or any other Washington

stations) because Mail Handler positions had become unnecessary to the needs of the Postal

Service due to decreasing mail volumes and revenues.  *Id.*

**B.    Defendant Eliminates the Position That Was Erroneously Posted.**

On May 29, 2014, Mr. Cole sent a letter to Lamar L. Grigsby, the Branch President for

the National Postal Mail Handlers Union, advising him of the Postal Service's intent to eliminate

the Mail Handler position for which Plaintiff had stated his desire to exercise his retreat rights.

Cole Decl. ¶ 12; Saliba Decl. Exhibit 6.  Mr. Cole noted that "[t]he reason for this action is the

change in mail volume and retail revenue which has resulted in the need to identify staffing

efficiencies and changes at the Government Mails.  As a result, we have identified that the listed

position is no longer necessary to the efficient operational needs of the Postal Service."  Saliba

Decl. Exhibit 6.  Defendant's records confirm that the position was eliminated as of June 2014.

Reardon Decl.[5] ¶ 3.

On June 4, 2014, Mr. Cole sent Plaintiff a letter – above the typed signature of

Postmaster Gerald Roane – stating that the May 19, 2014, letter offering Plaintiff retreat rights

"is rescinded due to Management rights to revert the position."  Saliba Decl. Exhibit 7.  Mr. Cole

issued the letter with Mr. Roane's approval.  Cole Decl. ¶ 13; Roane Decl.[6] ¶ 8.  Plaintiff

believes that this letter was fraudulent because it did not contain Mr. Roane's handwritten

signature and because Mr. Roane did not remember the letter when Plaintiff mentioned it to him

---

[5]  Citations to "Reardon Decl." refer to the Declaration of Timothy P. Reardon, dated June 26, 2019, and submitted herewith.

[6]  Citations to "Roane Decl." refer to the Declaration of Gerald A. Roane, dated June 27, 2019, and submitted herewith.

about a week later.  Depo. at 33-34.  Plaintiff also discounts the possibility that Mr. Cole was authorized to send out letters on behalf of Mr. Roane.  *Id.* at 36.

On June 6, 2014, Plaintiff claims that spoke to Mr. Roane, who allegedly informed him that he did not revert the position and that if his name is not on a letter, then the letter is not valid.  Exhibit F at 1.  Two days later, Plaintiff allegedly brought the June 4, 2014, letter to Mr. Roane's office and showed it to the Postmaster's secretary.  *Id.*  On Friday, June 13, 2014, Plaintiff contends that he spoke to Mr. Roane, who instructed Plaintiff to report to the position at the Government Mails Facility.  *Id.*

Subsequently, Mr. Cole personally explained to Plaintiff that Mail Handler position that had become vacant at the Government Mails Facility was not going to be filled by anyone because management was eliminating the position.  Cole Decl. ¶ 14.  Mr. Cole further explained to Plaintiff that no Mail Handlers would be returning to the Government Mails Facility from Curseen-Morris because there was not enough work to justify those positions.  *Id.*

### C.     Plaintiff Presents Himself at the Government Mails Facility

At 11:30 a.m. on Monday, June 16, 2014, Plaintiff clocked in at the Government Mails Facility and met with Mr. Harriston.  As the Plant Manager, Mr. Harriston instructed Plaintiff to get an assignment to work, which he performed for three hours.  Exhibit F at 1.  Mr. Harriston then informed Plaintiff that "they" instructed Plaintiff to report to Curseen-Morris.  *Id.*

Plaintiff remained working as a Mail Handler at Curseen-Morris until his retirement based on a disability in September 2015.  Ramos Decl. ¶ 10.

### PROCEDURAL HISTORY

On July 21, 2014, Plaintiff signed an EEO Complaint of Discrimination, alleging that Mr. Harriston had asked him to turn down his music in 2011 and, more recently, allowed the

Government Mails job to be posted "and said nothing about not needing help until he was told that I was accepting my retreat rights. He doesn't want me there." Saliba Decl. Exhibit 2 at 1. In subsequent administrative filings, Plaintiff expressed his belief that Mr. Harriston "disliked" him because of his religion – presumably based on the alleged gospel music incidents – when he told Plaintiff to report back to Curseen-Morris on June 16, 2014. *Id.* Exhibit 8. On April 21, 2016, the Equal Employment Opportunity Commission entered judgment in favor of Defendant.

On August 17, 2016, Plaintiff commenced this civil action. ECF No. 1. In his Second Amended Complaint, Plaintiff alleges a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging discrimination "on the basis of his clearly, expressed, sincerely held religious beliefs." ECF No. 26 ¶ 73. Plaintiff seeks monetary relief, including lost wages, compensatory damages for emotional harm, punitive damages, and attorney's fees. *Id.* at 8.

## STANDARDS OF REVIEW

### I.        MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the overall design of the rules of civil procedure, which is to secure the just, speedy, and inexpensive determination of every action. *Celotex Corp.*, 477 U.S. at 327. Indeed, the "very mission" of Rule 56 is "to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56(e) (advisory committee note).

Where no genuine dispute exists as to any material fact, summary judgment is required. *Anderson*, 477 U.S. 242. A genuine issue of material fact is one that could change the outcome

of the litigation.  *Id*. at 247.  The party moving for summary judgment need not prove the

absence of an essential element of the nonmoving party's case.  *Celotex Corp.*, 477 U.S. at 325.

"The burden on the moving party may be discharged by 'showing' – that is, pointing out to the

district court – that there is an absence of evidence to support the non-moving party's case."  *Id*.

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but

must instead proffer specific facts showing that a genuine issue exists for trial.  *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

       To avoid summary judgment, the plaintiff must present some objective evidence that

would enable the court to find an entitlement to relief.  "[T]he mere existence of a scintilla of

evidence in support of the plaintiff's position will be insufficient; there must be evidence on

which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252; *Potter v.*

*District of Columbia*, 558 F.3d 542, 549 (D.C. Cir. 2009) ("[M]erely colorable or not

significantly probative evidence . . . is insufficient to defeat a summary judgment motion."

(internal quotation marks and citation omitted)).  Unsupported speculation is not enough to

defeat a summary judgment motion; the existence of specific material evidentiary facts must be

shown.  *See, e.g.*, *David v. District of Columbia*, 246 F. Supp. 3d 647 (D.D.C. 2017) (non-

moving party's opposition "must consist of more than mere unsupported allegations or denials").

       Furthermore, "[s]ummary judgment for a defendant is most likely when a plaintiff's

claim is supported solely by the plaintiff's own self-serving, conclusory statements."  *Bonieskie*

*v. Mukasey*, 540 F. Supp. 2d 190, 195 (D.D.C. 2008) ("Summary judgment for a defendant is

most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving,

conclusory statements."); *Lindsey v. Rice*, 524 F. Supp. 2d 55, 60 (D.D.C. 2007) (granting

summary judgment where plaintiff's "self-serving statements [were] too conclusory to survive

[defendant's] summary judgment motion"). That is, "conclusory allegations and unsubstantiated speculation do not create genuine issues of material fact." *Bonieskie*, 540 F. Supp. 2d at 195 (citations omitted).

## II.   TITLE VII CLAIMS BASED ON DISPARATE TREATMENT

Though Plaintiff might wish it otherwise, the employment discrimination statutes did not transform federal courts into review boards for local employment decisions. The Court of Appeals for this Circuit has made clear that "Title VII . . . does not authorize a federal court to become 'a super-personnel department that reexamines an entity's business decisions.'" *Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999). To the contrary, a court "may not 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.'" *Fischbach v. D.C. Dep't of Corrs.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996).

In the absence of direct evidence, disparate treatment claims brought under Title VII are analyzed under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *See Barnette v. Chertoff*, 453 F.3d 513, 515 (D.C. Cir. 2005). In order to prevail in a case pursuant to Title VII, a plaintiff must initially establish at least a *prima facie* case of prohibited discrimination. *McDonnell Douglas*, 411 U.S. at 792; *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*) ("[U]nder the *McDonnell Douglas* framework, the complainant must first establish a *prima facie* case[.]"). As a general matter, to establish a *prima facie* case of disparate treatment discrimination, a plaintiff must demonstrate by a preponderance of the evidence that (1) he or she is a member of a protected group, (2) he or she suffered from an adverse personnel action; and (3) the unfavorable action gives rise to an inference of discrimination. *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999).

Once plaintiff has established a *prima facie* case, the burden shifts to the defendant, who must "articulate some legitimate, nondiscriminatory reason" for the adverse action. *Czekalski v. Peters*, 475 F.3d 360, 363-64 (D.C. Cir. 2007) (citing *McDonnell Douglas*, 411 U.S. at 802); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). If the defendant satisfies that burden, "the *McDonnell Douglas* framework-with its presumptions and burdens-disappear[s], and the sole remaining issue [is] discrimination *vel non.*" *Czekalski*, 475 F.3d at 363-64. Thereafter, to "survive summary judgment the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason." *Id.* at 363.

In *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008), the Court of Appeals for this Circuit held that in most Title VII discrimination suits, the district court need not decide if the plaintiff makes out a *prima facie* case of discrimination once the defendant has asserted a legitimate, non-discriminatory reason for the challenged actions. *Id.* As a result, the district court will usually be left to decide only "one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Id.*; *see also Figueroa v. Pompeo*, 923 F.3d 1078, 1092 (D.C. Cir. May 10, 2019). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all time with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

## ARGUMENT

### I.  PLAINTIFF DID NOT SUFFER A MATERIALLY ADVERSE EMPLOYMENT ACTION.

Discovery in this case has made clear that Defendant's elimination of the mistakenly posted Mail Handler position was not a materially adverse employment action.  Plaintiff suffered no injury or other adverse consequence as the result of Defendant's decision; he remained in his existing position until his retirement from the Postal Service.

Plaintiff has failed to allege any factual matter to plausibly establish that he suffered any cognizable adverse action.  As the D.C. Circuit has explained, "not everything that makes an employee unhappy is an actionable adverse action," because otherwise the courts would be called upon to mediate "even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like." *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) (internal quotation marks and citations omitted).  "For discrimination claims, an action must, to qualify, be a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Baird v. Gotbaum*, 662 F.3d 1246, 1248 (D.C. Cir. 2011) (internal quotation marks omitted).  A "tangible employment action in most cases inflicts direct economic harm." *Douglas v. Preston*, 559 F.3d 549, 552 (D.C. Cir. 2009).

The undisputed facts demonstrate that Defendant posted a job vacancy for a Mail Handler position at the Government Mails Facility and invited Plaintiff to make a selection as to whether he wanted to exercise his rights to take that job.  There also is no dispute that Defendant then realized that the posting was a mistake because the job was not supposed to be filled, and the agency eliminated the job vacancy.  Nobody ever filled the position.  It also is undisputed that, as a result of Defendant's posting mistake and its elimination of the position, Plaintiff did not suffer

a loss in pay or benefits.  He was not terminated, suspended, demoted, reassigned or disciplined as a result of Defendant's actions.  *See* Ramos Decl. ¶ 11.  Plaintiff suffered no economic harm whatsoever.  He remained in his position at Curseen-Morris until his retirement in September 2015.

Plaintiff argues that he "exercised and accepted his retreated right to" the vacant position a Mail Handler at the Government Mails Facility, but was "not provided the employment benefits" of that position.  Exhibit F at 2.  At his deposition, Plaintiff testified that the "employment benefits" that he did not receive were "the benefits of less stress, less harassment, having to deal with less people."  Depo. at 78.

This position is not logical.  Plaintiff's position that he had accepted the Government Mails job and was denied "employment benefits" is based on the incorrect assumption that, when he indicated his desire to exercise his retreat rights, Defendant was legally bound to give him the job at Government Mails, or otherwise precluded from eliminating the position.  There is no basis for that belief.  Mr. Cole's erroneously issued letter asking Plaintiff's preference regarding his retreat rights was not a binding contract.  Indeed, Mail Handler positions at the Postal Service are governed by the National Agreement between Defendant and the National Postal Mail Handler`s Union, and nothing in that agreement binds Defendant to provide "employment benefits" simply because a Mail Handler has chosen to exercise his retreat rights.

To support his position, Plaintiff argues that he was permitted to clock in at the Government Mails Facility on June 16, 2014.  Exhibit F at 2.  According to Plaintiff, this proves that he was employed at that facility, and that Mr. Harriston's demand that he return after a few hours to Curseen-Morris constituted the deprivation of his right to continue working at Government Mails.  The facts are clear, however, that Mr. Harriston did not expect Plaintiff to

show up at his facility on that day, and the Plant Manager needed a few hours to figure out what was going on before confirming that there was no position for Plaintiff there.

It is true that Plaintiff was given the hope that he would be able to return to the Government Mails Facility.  That hope, however, was based on Mr. Cole's mistaken assumption that the vacant position would be filled, and that Plaintiff was the next in line to exercise his retreat rights.  Plaintiff's disappointment that vacancy was eliminated, however, does not give rise to an actionable Title VII claim.  Defendant did not take any action that was "materially adverse"" to Plaintiff within the meaning of the statute.

For the above reasons, Plaintiff has not established a prima facie case under Title VII. The Court should grant summary judgment in favor of Defendant.

## II.      THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF DEFENDANT AS TO PLAINTIFF'S DISCRIMINATION CLAIM.

Even if Plaintiff could establish that he suffered a materially adverse employment action, his Title VII claim must fail because he cannot show that such action was based on his religion. As Plaintiff can offer no direct evidence of discrimination in connection with the elimination of the vacant Mail Handler position at the Government Mails Facility, he must utilize the *McDonnell Douglas* burden-shifting framework to attempt to avoid summary judgment.  As discussed below, even assuming Plaintiff can establish a *prima facie* case of discrimination under the *McDonnell Douglas* framework (which he cannot, as described below in Section II.B.), he cannot overcome Defendant's legitimate, non-discriminatory, clear, and reasonably specific justification for eliminating the position, namely, that the decrease in mail volume and revenue was the reason why the position was never filled.

A.     **Undisputed Evidence Supports Defendant's Legitimate, Non-Discriminatory Justification for Eliminating the Government Mails Position.**

Defendant's justification for eliminating the Mail Handler Position at the Government Mails Facility is set forth in Mr. Cole's May 29, 2014, letter to Mr. Grigsby, the Branch President of the Mail Handler's Union.  The letter stated:

> The reason for this action is the change in mail volume and retail revenue which has resulted in the need to identify staffing efficiencies and changes at the Government Mails (Facility).  As a result, we have identified that the listed position is no longer necessary to the efficient operational needs of the Postal Service.

Saliba Decl. Exhibit 6.

Defendant's legitimate reasons for eliminating the position are based on the significant increase in the use of electronic mail over the past decade, which caused a concomitant reduction in mail volume and retail revenue.  From 2011, when Defendant reassigned Plaintiff and other Mail Handlers, until 2014, mail volume continued to decline and the Government Mails Facility had insufficient work to justify filling those vacancies.  Roane Decl. ¶¶ 2-3, 5-6.  Mr. Cole testified that he informed Mr. Grigsby of the elimination of the Mail Handler position after attending a management meeting at which he was told that no Mail Handlers would be allowed to exercise retreat rights because Mail Handler positions in Washington "had become unnecessary to the needs of the Postal Service due to decreasing mail volumes and revenues." Cole Decl. ¶¶ 11-12.

Accordingly, Defendant has articulated a legitimate, nondiscriminatory, clear, and reasonably specific reason for eliminating the Mail Handler Position at the Government Mails Facility.

**B.     Plaintiff Cannot Show That the Position Was Eliminated Because of His Religion.**

There is no evidence that Plaintiff's participation in the Pentecostal religion was a reason why Defendant eliminated the Mail Handler position at the Government Mails Facility.  Indeed, Plaintiff has failed to provide evidence from which a reasonable juror could find discrimination and failed to satisfy the third element of the prima facie case: evidence that gives rise to an inference of discrimination.

For Plaintiff's theory to be viable, he must offer admissible evidence to show that Mr. Harriston, the man who allegedly harbored anti-religious animosity against Plaintiff, was the person who decided that the position should not be filled.  There is no such evidence.  Plaintiff's belief that Mr. Harriston disliked him for his religion is just that – a belief.  Pl. Depo. at 49 ("That's just how I felt."); 53 ("I don't know how he felt.").  The basis for this belief is that Plaintiff felt harassed when Mr. Harriston asked him to turn his gospel music down and did not make the same demand of others who played music other than gospel.  *Id* .at 49.  In addition, Plaintiff testified that he is not even sure whether Mr. Harriston knew which religion Plaintiff practiced.  *Id.* at 56; *see also* Saliba Decl. Exhibit 9 (Mr. Harriston's affidavit stating that "I am not aware of Mr. Tyson's religion.").  Further, Plaintiff conceded that he has no reason to doubt Mr. Harriston's sworn statement that he was unaware of Plaintiff's religion.  Pl. Depo at 56-57; Saliba Decl. Exhibit 10.  Tellingly, Plaintiff did not raise any complaint regarding religious discrimination in or before 2011, when he was working in close proximity with the Plant Manager at the Government Mails Facility.  *Id.* at 57.

The evidence is clear that Mr. Cole mistakenly posted the position and then asked Plaintiff whether he wanted to exercise his retreat rights to take the job.  Mr. Cole subsequently was told at a management meeting that the position was not necessary, and so he informed Mr.

Grigsby, the Mail Handlers Union representative, that the position would be "reverted," or eliminated.  Mr. Harriston had no participation in these decisions.

Mr. Harriston first became involved weeks later, when Plaintiff showed up at the Government Mails Facility unannounced on June 16, 2014.  By that time, the position had already been eliminated without Mr. Harriston's involvement.  Plaintiff arrival at Government Mails on that day most certainly caught the Plant Manager by surprise.  Mr. Harriston had Plaintiff clock in and work for a few hours while he consulted with Mr. Roane, and then reported back to Plaintiff that he did not have a job there.  Mr. Harrison did not have the authority to make any employment decisions and did not do so here.  Roane Decl. ¶ 9 (declaring that Mr. Harriston "did not communicate with me in connection with the reversion of Mail Handler position number 95298122" and "did not have the authority to revert Mail Handler positions").  Only Mr. Roane, as Postmaster of Washington, D.C., had the authority to eliminate the position, *id.*, and he also was unaware of Plaintiff's religion, Saliba Decl. Exhibit 10 at 1.

Nor is there evidence to support Plaintiff's subjective belief that Mr. Harriston disliked him because he was religious.  Even when inferences are resolved in Plaintiff's favor, the evidence supports the more compelling inference that, if Mr. Harriston had any animosity toward Plaintiff, such animosity likely was based on the disrespectful manner in which Plaintiff talked back to him.  At his deposition, Plaintiff freely admitted that he spoke to Mr. Harriston in a provocative and snarky attitude that reflected an obvious lack of respect for the Plant Manager. *See* Pl. Depo. at 38 ("So I said to him, Mr. (Harriston), when you come in this building, you have to make two right turns and two left turns to get to your office; they gave you that office back there because you would be off this floor, not being disturbed by the trucks that's backing in or what's going on on this floor.").  Plaintiff further testified that he did not care whether Mr.

Harriston was bothered by the loud gospel music or Plaintiff's singing along to the music.  In

Plaintiff's view, only his immediate supervisor had the right to talk to him about a problem; Mr.

Harriston had no right to do so.  *Id.* at 42, 44.  A reasonable juror would find that Plaintiff's

attitude toward his second-level supervisor was the reason for any tension between the two, not

Plaintiff's participation in a religion.

Further, Plaintiff offers no valid rebuttal to Defendant's legitimate and specific reasons

for eliminating the position.  At his deposition, Plaintiff testified that he doubted that the position

was eliminated due to decreased mail volume and retail revenue only because "we had an x-ray

company building down the street and they were bringing employees junior to me from down

there to do work in the V Street office."  *Id.* at 31.  Defendant interprets this testimony as

reflecting Plaintiff's belief that employees at Defendant's x-ray facility at 3300-3500 V Street

were brought to the Government Mails Facility to perform Mail Handler duties.  There is no

evidentiary support for this contention.

Finally, the broader context supports Defendant's position that the job was not eliminated

for any discriminatory reason.  Defendant did not select another employee who practices a

different religion, or no religion at all, to fill the position in place of Plaintiff.  Defendant

eliminated the job and never awarded the position to anybody else.  Cole Decl. ¶ 17; Reardon

Decl. ¶ 3.

For these reasons, Defendant is entitled to summary judgment with respect to Plaintiff's

claims of discrimination based on religion.

III.    **THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF DEFENDANT AS TO PLAINTIFF'S COMPENSATORY DAMAGES CLAIM.**

In this case, Plaintiff alleges that he is entitled to compensatory damages due to the stress that Defendant caused him by eliminating the Mail Handler Position.  The Court should grant summary judgment in favor of Defendants with respect to this component of Plaintiff's damages claim because he is unable to support the claim with admissible evidence.

The theory underlying Plaintiff's compensatory damages claim is that, due to Defendant's discrimination, he was subjected to additional stress by having to remain at Curseen-Morris.  This stress involved a fear of becoming injured as well as uncomfortable interactions with certain co-workers.  According to Plaintiff, he chose to retire in September 2015 in part due to this stress.

There are numerous problems with Plaintiff's claim, but the fatal flaw is that he has no admissible opinion testimony regarding his medical diagnosis or whether Defendant's actions caused his disability.  It is undisputed that Plaintiff did not disclose a medical expert pursuant to Federal Rule of Civil Procedure 26(b)(2)(A).[7]  He is thus precluded from offering expert opinions regarding his medical diagnosis and condition, as well as the more complex question of whether his medical condition was caused by Defendant's actions, rather than other significant stressful events happening at the same time in his life.[8]

Indeed, not only is Plaintiff precluded from offering an expert on the topic, he also may not present a treating physician who has been disclosed as a fact witness to offer expert opinions,

---

[7]  Plaintiff's Initial Disclosures did not list any medical professionals as "individual[s] likely to have discoverable information."  Exhibit F at 1-3.

[8]  During the relevant time period, Plaintiff suffered various sources of stress in his life, including a divorce, the attempted foreclosure of his home, a bankruptcy proceeding, a fraud litigation against a bank.  Depo. at 73-76.  These events occurred before, during, or shortly after Defendant eliminated the Mail Handler position at Government Mails.

and he may not present expert opinions that are found in medical records.  In *Daniels v. District of Columbia*, 15 F. Supp. 3d 62 (D.D.C. 2014), the plaintiff alleged that the defendants falsely arrested her and caused other damages.  *Id.* at 64.  The defendants challenged the admissibility of testimony or documents seeking to establish that the defendants' actions complicated the plaintiff's high-risk pregnancy.  *Id.* at 67.  The defendants argued that the plaintiff had failed to disclose under Rule 26 any medical expert to provide "medical opinion testimony to support such a causation theory" and that the plaintiff's treating physician could not testify on those issues.  *Id.* at 67-68.

The court granted the defendants' motion and excluded the proffered testimony.  The court noted that it was undisputed that plaintiff made no Rule 26(b)(2)(A) disclosures.  *Id.* at 68.  Turning to the plaintiff's intention to use the treating physicians to "describe and explain any diagnosis and the treatment prescribed," the court rejected the argument that treating physicians are not expert witnesses.  *Id.* at 68-69.  The court held that "a treating physician who testifies as to her diagnosis and treatment of the patient is still giving expert testimony" that was governed by Rule 26(a)(2)(A) and Federal Rule of Evidence 702.  *Id.* at 69.  After reviewing the history of the applicable rules, and considering the cases relied upon by the plaintiff, the court held that it must exclude any testimony that is properly classified as "expert" in nature.  *Id.* at 72.  The court drew the following distinction with respect to the proposed evidence:

> [T]he plaintiff may testify about her own perception of her physical and mental health before and after the incident, including any pain, fear, or anxiety she experienced during those times, and she may present lay or fact witnesses to testify as to their observations of the plaintiff's emotional distress.  To the extent, however, that the plaintiff seeks to associate, connect or link the hospitalization for her pre-existing high risk pregnancy to the defendants' alleged conduct, she stretches the bounds of lay testimony too far into the territory of causation without the requisite expert medical testimony.

*Id.* at 74-75; *see also Rudder v. Williams*, 2016 WL 10999915, Civ. No. 19-2174 (RJL), *2 (D.D.C. June 9, 2016) (excluding the testimony of eight physicians, not disclosed pursuant to Rule 26(a)(2)(C), regarding the diagnosis and treatment they provided to a plaintiff).

As *Daniels* makes clear, evidence regarding diagnoses and causation are matters of medical expertise[9] that fall within Federal Rule of Evidence 702 and thus must be disclosed under Federal Rule of Civil Procedure 26.  Plaintiff, therefore, cannot satisfy his burden to prove that his stress was caused by Defendant's actions, as opposed to other causes (such as divorce, bankruptcy, fraud litigation, and attempted foreclosure actions).  Because Plaintiff will have no admissible evidence on this issue, he cannot satisfy his burden to establish that Defendant is responsible for his stress and thus is not entitled to compensatory damages.

## IV.   THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF DEFENDANT AS TO PLAINTIFF'S PUNITIVE DAMAGES CLAIM.

The Second Amended Complaint requests that Plaintiff be awarded punitive damages in an amount to be decided by a jury for damages suffered as a result of Defendant's allegedly unlawful actions.  ECF No. 26 at 8.

This claim must be dismissed.  Title VII allows a plaintiff to seek compensatory damages against the federal government, but not punitive damages.  *See* 42 U.S.C. § 1981a(b)(1) ("A complaining party may recover punitive damages under this section against a respondent (*other than a government, government agency or political subdivision*) if [he] demonstrates that the respondent engaged in a discriminatory practice.") (emphasis added); *see McAlister v.*

---

[9]  *See Halcomb v. Woods*, 610 F. Supp. 2d 77, 85 (D.D.C. 2009) (quoting *Baltimore v. B.F. Goodrich Co.*, 545 A.2d 1228, 1231 (D.C. 1988) (requiring expert testimony as to causation where plaintiff's depression and anxiety were potentially traceable to many sources, including the defendant's conduct, marital discord, and a discrimination lawsuit that the plaintiff had initiated before the accident)).

*Potter,* 733 F. Supp. 2d 134, 146 (D.D.C.2010) (noting that Title VII "preclude[s]

punitive damages against government agencies").  Plaintiff's request for punitive damages is not

cognizable in connection with a Title VII claim against the United States.

## CONCLUSION

For the reasons set forth above, the Court should grant this motion and grant summary

judgment in favor of Defendant.

Dated:  June 28, 2019                          Respectfully submitted,

JESSIE K. LIU, D.C. Bar # 472845
States Attorney

DANIEL F. VAN HORN, D.C. Bar # 924092
Chief, Civil Division


_____/s/ Paul Cirino_____
PAUL CIRINO
Assistant United States Attorney
Civil Division
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C.  20530
Phone: (202) 252-2529
Fax: (202) 252-2599
paul.cirino@usdoj.gov

*Attorneys for Defendant*