UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HOWARD T. TYSON, SR., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 16-1678 (FYP) |
| LOUIS DEJOY, *Postmaster General*,[1] | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

Plaintiff Howard T. Tyson, Sr., is a former employee of the United States Postal Service ("USPS"). He initiated this action, *pro se* and *in forma pauperis,* against the Postmaster General of the USPS, alleging that the USPS discriminated against him based on his religion, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17. *See* ECF No. 26 (Second Amended Complaint), ¶¶ 1–2. He seeks monetary relief, including lost wages and compensatory damages for emotional distress.[2] *See id.*, ¶ 5. Currently before the Court is USPS's motion for summary judgment. *See* ECF No. 41. Upon review, the Court agrees with USPS that most of the actions allegedly taken against Tyson were not materially adverse, and

---

[1]  Mr. DeJoy is automatically substituted as defendant for his predecessor, pursuant to Fed. R. Civ. P. 25(d).
[2]  Tyson also seeks punitive damages, *see* Sec. Am. Compl. at "Relief" ¶ 4. But Title VII allows only the award of compensatory damages against the federal government. *See* 42 U.S.C. § 1981a(b)(1) ("A complaining party may recover punitive damages under this section against a respondent (*other than a government, government agency or political subdivision*) if [he] demonstrates that the respondent engaged in a discriminatory practice[.]") (emphasis added); *see also McAlister v. Potter*, 733 F. Supp. 2d 134, 146 (D.D.C. 2010) (noting that Title VII "preclude[s] punitive damages against government agencies"). Tyson's claim for punitive damages is therefore dismissed. Tyson also seeks attorney's fees. *See* Sec. Am. Compl. at "Relief" ¶ 5. Generally, *pro se* litigants cannot recover attorney's fees. *See Lawrence v. Bowsher*, 931 F.2d 1579, 1581 (D.C. Cir. 1991) (finding that *pro s*e litigant was not entitled to attorney's fees in discrimination suit). To the extent that he seeks fees arising from the representation of his prior counsel, Tyson has submitted no information to support such an award and that claim is also denied.

even where such actions may have been materially adverse, there is no evidence of discriminatory animus on the part of USPS. As explained in more detail below, the motion for summary judgment will be granted.

## FACTUAL BACKGROUND

Tyson was employed by USPS from November 1992 until his retirement in September 2015. *See* ECF No. 41-7 (Declaration of Ronald A. Ramos), ¶¶ 4–10; ECF No. 46 (Plaintiff's Opposition) at 4.[3] In either late 2009 or early 2010, Tyson began working as a mail handler at the Government Mails Facility ("GMF") in Washington, D.C. *See* Ramos Decl., ¶¶ 5–6. At GMF, Tyson's first-level supervisor was Osha Davis, and his second-level supervisor was Cecil Harriston, the GMF Plant Manager. *See* ECF No. 41-9 (Exhibits to the Declaration of Richard G. Saliba), Ex. 9 (EEO Investigative Affidavit signed by Cecil Harriston) at 1–2; Pl. Opp. at 11. Tyson asserts that Harriston harbored religious discriminatory animus against him. *See* Sec. Am. Compl., ¶ 74–77. Harriston, who has since passed away, formally denied those allegations. *See* Sec. Am. Compl., ¶ 66; ECF No. 49 (Defendant's Reply) at 7 n.5; USPS Ex. 1 (Information for Pre-EEO Complaint) at 3; USPS Ex. 9.

Tyson alleges that when he played gospel music at work, Harriston discriminated against him. *See* Sec. Am. Compl. ¶¶ 6–7, 13; ECF No. 46-2 (Plaintiff's Opposition Exhibits), at 9. According to Tyson, Harriston "told [Tyson] to turn down" his music on June 9, 2010. *See* Sec. Am. Compl., ¶ 6, 13, 15; USPS Ex. 2 (EEO Complaint of Discrimination). Tyson's co-worker, Sharon D. Nelson stated in a declaration that she listened to gospel music with Tyson, and that Harriston removed their radio because they listened to Christian music. *See* Pl. Opp. Exs. at 22. Nelson also noted that other employees listened to secular music with no incident. *See id*.

---

[3]   Hereinafter, reference to any page numbers from Tyson's *pro se* filings refer to those that the Court's electronic case filing system automatically assigns.

Another co-worker, Chris Tate, stated in another declaration that he and others had no issues playing secular music on the job, and that Harriston "bothered Tyson." *See id.* at 9.[4]

Tyson identified with the Christian denominations of Pentecostal and Holiness. *See* USPS Ex. D at 52–55. Harriston testified that he was unaware of Tyson's religious affiliations, and that Harriston asked Tyson to turn the music down because it was too loud. *Id*. at 56–57; USPS Ex. 9 at 4. At one point, Tyson attempted to "anoint" Harriston with holy oil because he "wanted to see [Harriston] blessed." *See* USPS Ex. D at 41. According to Tyson, Harriston responded by saying "[d]on't come at me with that stuff." *Id*.[5]

On March 25, 2011, Tyson received a letter from Gerald A. Roane, who was then the Postmaster of Washington, D.C., stating that Tyson's job would "become excess to the needs" of his section at GMF, and that he would be reassigned to a different position, effective April 2, 2011. *See* USPS Ex. C (Mar. 25, 2011 Roane Letter); *see also* ECF No. 41-6 (Declaration of Gerald A. Roane), ¶ 1. The letter advised Tyson that he would have "retreat rights," which would entitle him to be rehired at GMF if a vacancy opened at that facility.[6] *See* USPS Ex. C. USPS avers that, during this period, mail handlers were being reassigned from GMF to other facilities in the region due to declining mail volume. *See* Roane Decl., ¶¶ 2–6; ECF No. 41-5 (Declaration of Christopher B. Cole[7]), ¶ 6.

---

[4]  Tyson also alleges that Harriston breached agency and/or National Postal Mail Handlers Union ("Union") protocol by confronting him about the music, asserting that only his immediate supervisor, Davis, was authorized to directly address him regarding this issue. *See* Sec. Am. Compl., ¶¶ 9–12; ECF No. 41-4 (USPS Exhibits), Ex. D (Pl. Deposition Excerpts) at 42, 44. Because Tyson did not feel obligated to take orders from Harriston, Tyson admittedly felt comfortable openly disagreeing with Harriston about his directives. *See* ECF No. 41-1 (Defendant's Memorandum) at 4; USPS Ex. D at 43–4.

[5]  Tyson acknowledged that he did not know what Harriston thought about Tyson's Christian beliefs. *See* USPS Ex. D at 49, 53.

[6]  The later stated that Tyson would "retain the right to retreat to the section upon the occurrence of the first residual vacancy in the salary level after employees in the section have completed bidding. Failure to bid for the first available vacancy w[ould] end such retreat right." *See* USPS Ex. C.

[7]  Christopher B. Cole is a former Supervisor of Customer Services in Washington D.C., from April 2006 to December 2011, and a current Program Training Administrator. *See* Cole Decl., ¶¶ 1-5.

On March 26, 2011, Tyson's position at GMF was formally eliminated, and he was reassigned to work as a mail handler at the Curseen-Morris Processing and Distribution Center ("Curseen-Morris"), also in Washington, D.C. *See* Ramos Decl., ¶ 6. Although Tyson implies that his reassignment was the result of his friction with Harriston, he does not allege that the transfer was an adverse action. *See* Sec. Am. Compl., ¶ 15; ECF No. 57 (Plaintiff's Supplemental Memorandum) at 6. In October 2012, Tyson was promoted to the position of Group Leader Mail Handler. *See* Ramos Decl., ¶ 7.[8]

In May 2014, a mail handler position became vacant at GMF. *See* Cole Decl., ¶ 9. Cole assumed that the vacancy would be filled and posted a job announcement for the position. *Id.*, ¶ 9; USPS Ex. 4 (GMF Job Posting). On May 19, 2014, Cole determined that Tyson had retreat rights to fill the position, and he issued an Offer of Retreat Rights letter to Tyson for the vacant position. *See* Cole Decl., ¶ 9; USPS Ex. 5 (May 19, 2014 Offer Letter). Tyson advised Cole that he wished to exercise his retreat rights and accepted the job "on the spot." *See* Cole Decl., ¶ 10; Sec. Am. Compl., ¶ 27.

Approximately one week later, however, Cole learned at a management meeting that he should not have issued the Offer of Retreat Rights to Tyson because USPS management had chosen to "revert" or eliminate the vacant mail handler position, due to the decreasing need for mail handlers at GMF and other facilities. *See* Cole Decl., ¶ 11. The decision to "revert" the position was made by Roane, who attests that he was unaware of and made no decisions based on Tyson's religion. *See* USPS Ex. 10 (EEO Investigative Affidavit signed by Roane) at 4.

---

[8] On October 17, 2012, Tyson was injured while transferring mail from a dolly. *See* USPS Ex. D at 19. Shortly thereafter, he filed a claim with the Department of Labor's Office of Workers' Compensation Programs for a traumatic injury, described as "a lumbar sprain, an aggravation of lumbar stenosis, and a displacement of a lumbar intervertebral disc without myelopathy." *See* USPS Ex. E (Nov. 16, 2015 Dep't of Labor Worker's Compensation Decision) at 1. On December 27, 2013, Tyson returned to work as a Group Leader Mail Handler at Curseen-Morris and was assigned limited-duty work based on his needs request. *See* Ramos Decl., ¶ 9.

Because the position was eliminated, no one could exercise retreat rights for the position.[9]  See Cole Decl., ¶ 11.

On May 21, 2014, Tyson states that he was called into the office of Curseen-Morris Senior Manager Yolanda Sanders, who informed him that the mail handler position at GMF had been reverted and the offer of that position to Tyson was rescinded.  See Sec. Am. Compl., ¶¶ 28–29.  She did not provide him with documentation but indicated that the Union would provide him with a letter confirming the reversion.  Id., ¶¶ 29–31; ECF No. 63 (Plaintiff's Supplemental Memorandum VI) at 2–3.  Tyson contacted his Union representative, Lamar Grigsby, who stated that he did not have such a letter.  See Sec. Am. Compl., ¶ 32.  Tyson then called the Union's main office and reached a "Mr. Dick."  Id., ¶ 33.  Dick allegedly stated that if Grigsby did not have a letter of reversion, then Tyson should report to GMF to fill the mail handler position.  Id., ¶ 36.

On May 29, 2014, Cole sent a letter to Grigsby, advising him that the vacant GMF position had been eliminated.  See Cole Decl., ¶ 12; USPS Ex. 6 (May 29, 2014 Letter).  The letter notes that "[t]he reason for this action is the change in mail volume and retail revenue which has resulted in the need to identify staffing efficiencies and changes at the Government Mails."  See USPS Ex. 6.[10]

On June 4, 2014, Sanders provided Tyson with a letter confirming that the retreat position was "rescinded due to Management rights to revert the position."  See USPS Ex. 7 (Jun. 4, 3014

---

[9]  Tyson also alleges that USPS failed to comply with the Union's waiting period and notice requirements, which allow eligible existing USPS employees to "bid" on a vacant duty position during a ten-day holding period, but also provides that no "bids" should be posted if a retreat offer is made.  See Sec. Am. Compl., ¶¶ 18–24.  Tyson reads this provision to mean that he should have been preliminarily offered the position outright before it was inadvertently posted.  See id.  USPS, however, maintains that the position should not have existed in the first place. See Cole Decl., ¶ 11; USPS Ex. 10.

[10]  Although Tyson argues that he should have received a copy of the May 29, 2014, letter, it is unclear why he believes that he was entitled to receive a copy of a formal communication between USPS and the Union.  See Pl. Opp. at 20; Pl. Supp. Mem. VI at 2.

Letter); Sec. Am. Compl., ¶ 39. The notification letter was signed by Cole[11] and sent under cover of the typed signature of Postmaster Roane. *See* USPS Ex. 7. Roane avers that Cole had full authority to independently send the document under Roane's signature block.[12] *See* Roane Decl., ¶ 8; Cole Decl., ¶ 13.

Tyson contends that he spoke with Roane, either in passing or by phone, approximately four times in the first part of June, and at none of those times did Roane state that the position at GMF was reverted. *See* Pl. Opp. at 7; Pl. Opp. Exs. at 8; Pl. Supp. Mem. VI at 3–4. According to Tyson, on June 6, 2014, Roane said that he did not recall issuing the letter, had not rescinded the position, and stated that if his signature was not on the letter, it was invalid. *See* USPS Ex. F (Excerpts from Pl.'s Answers to Interrogatories) at 1. Tyson asserts that, at Roane's request, Tyson brought the letter to Roane's office for review, leaving it with his secretary. *See id.*; Sec. Am. Compl., ¶¶ 47–48. Tyson alleges that on June 13, 2014, Roane instructed him to report to GMF to fill the retreat position. *See* USPS Ex. F at 1; Sec. Am. Compl., ¶ 49. Roane denies that he ever instructed Tyson to report to GMF, and further denies that he interacted with Tyson more than once. *See* USPS Ex. 9 at 2; USPS Ex. 10 at 2.

On June 16, 2014, at 11:30 a.m., Tyson clocked in at GMF and met with Harriston. *See* USPS Ex. F at 1; Sec. Am. Compl., ¶ 50. Tyson alleges that Harriston was hostile to him in front of others upon his arrival. *See* Sec. Am. Compl., ¶ 51. According to Tyson, Harriston

---

[11]    Cole also attests that, between June 4, 2014 and June 16, 2014, he encountered Tyson and personally informed him again that the vacant mail handler retreat position "was not going to be filled by anyone because management was eliminating the position[,]" and that no mail handlers would be transferred from Curseen-Morris to GMF because there was not enough work available. *See* Cole Decl., ¶ 14.

[12]    Tyson argues, without evidentiary basis, that Roane never offered his approval for this notification letter, and that it was, essentially, forged. *See* Pl. Supp. Mem. VI at 4. In support, he attaches USPS's answers to his requests for admissions, claiming that therein, USPS "admitted that Gerald Roane was not the person who instructed Christopher Cole to draft the revert letter." *Id.* He misinterprets this admissions response, however; the attached admission reads as a double-negative, attesting that Roane *did*, in fact, offer such approval. *See id.* at Ex. 1 (Response No. 14.)

initially informed him that there was no position for him at GMF.  *See id.*, ¶ 54.  Tyson responded that he was reporting to GMF under Roane's instructions and that the reversion letter was "in question."  *See id.*, ¶ 55.  Thereafter, Harriston instructed Tyson to report to a group leader temporarily, for a limited-duty assignment.  *See* USPS Ex. F at 1.  Harriston did not have authority to offer Tyson a permanent position at GMF, *see id.*, and Harriston contends that he was confused because he had no notice that Tyson would be reporting to GMF.  *See* USPS Ex. 9 at 2.  Harriston then contacted Roane, who stated that he had not instructed Tyson to report to GMF.  *See id*.  In the meantime, Tyson worked at GMF for three hours.  *See* USPS Ex. F at 1.; Sec. Am. Compl., ¶¶ 59–60.  Shortly thereafter, Harriston instructed Tyson to report back to Curseen-Morris.  *See* USPS Ex. F at 1; Sec. Am. Compl., ¶¶ 61–62.  Tyson reported to Curseen-Morris at 3:30 p.m. that same afternoon.  *See* Sec. Am. Compl., ¶ 63.

On June 20, 2014, Tyson filed a pre-complaint with the Equal Employment Opportunity Commission ("EEOC") (Case No. lk-206-0049-14).  *Id.*, ¶ 64; USPS Ex. 1.  On July 21, 2014, Tyson filed a formal complaint with the EEOC, alleging that Harriston (1) discriminated against him in 2011 by asking him to turn down his gospel music; and (2) allowed the vacant GMF position to be posted "and said nothing about not needing help until [Harriston] was told that [Tyson] was accepting [his] retreat rights."  *See* USPS Ex. 2 at 1.  In other words, Tyson contended that the GMF position was eliminated because Harriston did not want him to return to GMF.  *See id*.  On April 21, 2016, the EEOC entered judgment in favor of USPS.  *See* Def. Mem. at 8.  Tyson continued working as a mail handler at Curseen-Morris until his retirement based on disability on September 8, 2015.  *See* Ramos Decl., ¶ 10; Pl. Opp. at 1–2.  The mail handler position at GMF was never filled, and no mail handlers retreated to GMF in 2014.  *See* Cole Decl., ¶ 17; Reardon Decl., ¶ 3.

7

## PROCEDURAL HISTORY

On October 24, 2016, USPS filed a preliminary motion to dismiss, ECF No. 9. Tyson, proceeding *pro se* at the time, filed an opposition, ECF No. 13; but he also filed a first amended complaint, ECF No. 14, rendering the pending motion to dismiss moot, *see* Dec. 22, 2016 Min. Ord. On December 15, 2016, USPS filed another motion to dismiss and/or for summary judgment, ECF No. 15, in response to the first amended complaint. On September 27, 2017, and after considering briefing by all parties, the Court denied the motion, *see* Sept. 27, 2017 Mem. Op. & Ord., ECF No. 24, finding that the allegations contained in Tyson's amended complaint were sufficient to state a plausible claim for discrimination, and that consideration of summary judgment was premature, *see id.* Tyson filed a second amended complaint on February 8, 2018, ECF No. 26.

After discovery closed on May 31, 2019, USPS filed its pending motion for summary judgment and memorandum in support on June 28, 2019. In the motion, USPS argued that: (1) the reversion of the GMF mail handler position did not constitute a materially adverse employment action, and (2) in any event, USPS proffered legitimate and non-discriminatory reasons for the reversion. *See* Def. Mem. at 12–18. In response, Tyson filed an opposition and USPS filed a reply. Tyson then filed an "addendum" to his opposition, ECF No. 50 (Plaintiff's Addendum), and a "reply," ECF No. 51 (Plaintiff's Surreply).[13]

On May 30, 2020, the Court entered an order directing both parties to submit supplemental briefing on the motion for summary judgment. *See* ECF No. 54. The Court

---

[13]   Tyson did not seek leave to file the addendum, but he filed a motion for leave to file the reply, ECF No. 52. USPS declined to take a position regarding the two documents. *See* ECF No. 53, USPS Response. Given Tyson's *pro se* status, the Court will grant Tyson leave to file these documents and has considered the contents of both filings.

ordered supplemental briefing on whether USPS is entitled to summary judgment with respect to Plaintiff's claims regarding: (1) the withholding of permission to play gospel music in the workplace and the alleged scrutiny and monitoring of Plaintiff based on his religion; (2) his 2011 transfer to Curseen-Morris, and (3) retaliation. *Id*. at 2.

On June 30, 2020, USPS filed its supplemental memorandum, ECF No. 55 (USPS Supplemental Memorandum), and Tyson filed his supplemental memorandum on August 30, 2020, ECF No. 57 (Plaintiff's Supplemental Memorandum I). On October 8, 2020, Tyson filed, without leave of Court, a second supplemental memorandum, ECF No. 58 (Plaintiff's Supplemental Memorandum II). He then filed a third supplemental brief, ECF No. 60 (Plaintiff's Supplemental Memorandum III), on October 22, 2020; a fourth supplemental brief, ECF No. 61 (Plaintiff's Supplemental Memorandum IV), on November 10, 2020; a fifth supplemental brief on November 23, 2020; a sixth supplemental brief on November 25, 2020; and a seventh and final supplemental brief on December 24, 2020.[14]

In his supplemental briefing, Tyson presents arguments in support of his claim of religious discrimination based on Harriston's restriction of Tyson's playing of Christian music at his workstation. *See* Pl. Supp. Mem. at 5–6. Without leave of Court, Tyson also includes additional arguments in support of his discrimination claim based on the reversion of the GMF

---

[14] Tyson raises several concerns regarding his former counsel in this supplemental briefing. *See* Pl. Supp. Mem. II at 1–5; Pl. Supp. Mem. III at 1–3. He suggests that counsel filed a "first amended complaint" instead of a second amended complaint, and that this "first amended complaint" was mistitled, untimely, and contained various other misnomers and spelling errors. *See* Pl. Supp. Mem. II at 1–5; Pl. Supp. Mem. III at 1–3; Pl. Supp. Mem. IV at 1–2. The Court notes that, despite Tyson's belief, counsel filed a timely second amended complaint, and the second amended complaint does not contain the misnomers, misspellings, or other errors, that are noted by Tyson. *See generally* Sec. Am. Compl. Tyson also states that he did not approve the contents of this pleading, including an additional claim for retaliation. *See* Pl. Supp. Mem. III at 3. The Court notes that the second amended complaint does not contain a formal claim for retaliation, though the word "retaliation" is mentioned. *See* Sec. Am. Compl. ¶¶ 74, 83. He also alleges that the pleading (1) failed to include a claim of religious discrimination, and (2) omitted the facts regarding the reversion. *See* Pl. Supp. Mem. V at 1; *id*. at Ex. 1; Pl. Supp. Mem. VI at 1; *id*. at Ex. 1. The Court notes that the pleading does in fact contain such information, as well as an explicit cause of action for religious discrimination. *See generally* Sec. Am. Compl.

mail handler position. *See* Pl. Supp. Mem. V at 1–3; Pl. Supp. Mem. VI at 1–4; *id*. at Ex. 1; Pl. Supp. Mem. VII at 1; *id.* at Ex. 1.

## LEGAL STANDARD

### I. Standard of Review – Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, a court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson,* 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

### II. Discrimination under Title VII

Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, prohibits status-based discrimination in federal and District of

Columbia workplaces.  *See* 42 U.S.C. § 2006; *see also* Equal Employment Opportunity Act of 1972, Pub. L. 92-261, sec. 10, § 715, 86 Stat. 103, 111, codified as amended at 41 U.S.C. § 2000e-16 (extending Title VII to the federal government and the District of Columbia).  It prohibits a federal employer or the District of Columbia from making any personnel decisions based on an employee's race, color, sex, religion, or nationality.  *See* 42 U.S.C. § 2000e–16; *Baird v. Gotbaum*, 792 F.3d 166, 168 (D.C. Cir. 2015).  The "two essential elements of a discrimination claim" under Title VII are "that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, [or] national origin." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008) (collecting cases).

The first element, an "adverse employment action," is an established legal term.  *See generally, Douglas v. Donovan*, 559 F.3d 549, 551–52 (D.C. Cir. 2009); *Ginger v. Dist. of Columbia*, 527 F.3d 1340, 1343 (D.C. Cir. 2008).  It means "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).  An employee must "experience[] materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002); *see also Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (distinguishing between non-actionable "purely subjective injuries" and actionable "objectively tangible harm").  An actionable adverse action "in most cases inflicts direct economic harm." *Burlington Indus.*, 524 U.S. at 762.

If a plaintiff can summon direct evidence of discriminatory intent, such evidence will

"generally entitle plaintiff to a jury trial" and defeat a defendant's motion for summary judgment. *See Ayissi–Etoh v. Fannie Mae*, 712 F.3d 572, 576 (D.C. Cir. 2013) (per curiam) (quoting *Vatel v. Alliance of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011)).  But if a plaintiff can only adduce circumstantial evidence of discrimination, courts must then apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

To establish a *prima facie* case of discrimination under this framework, a plaintiff bears the burden of showing that (1) she "is a member of a protected class;" (2) she "suffered an adverse employment action;" and (3) "the unfavorable action gives rise to an inference of discrimination." *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007) (citation omitted).  If a plaintiff establishes a *prima facie* case, the burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its actions.  *McDonnell Douglas*, 411 U.S. at 802.

While this framework generally requires a plaintiff to bear the initial burden of making out a *prima facie* case of discrimination, the D.C. Circuit has clarified that courts "need not—*and should not*—decide whether the plaintiff actually made out a *prima facie* case under *McDonnell Douglas*," where (1) "an employee has suffered an adverse employment action" and (2) "an employer has asserted a legitimate, non-discriminatory reason for the decision." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in original).  Thus, where an employer asserts a legitimate, nondiscriminatory reason for an adverse employment action, "the burden-shifting framework disappears, and a court reviewing summary judgment looks to whether a reasonable jury could infer intentional discrimination . . . from all the evidence." *Carter v. George Wash. Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004).

To do so, at the summary judgment stage, courts may consider the following evidence: (1) a plaintiff's *prima facie* case; (2) any evidence plaintiff presents to rebut the employer's

12

explanations for its actions, and; (3) any additional "evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer)." *Hampton v. Vilsack*, 685 F.3d 1096, 1100 (D.C. Cir. 2012); *Carter*, 387 F.3d at 878. A plaintiff's own disagreement with, or disbelief of, the employer's explanation cannot alone "satisfy the burden of showing that a reasonable jury could find that the employer's asserted reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis." *Burton v. District of Columbia*, 153 F. Supp. 3d 13, 58 (D.D.C. 2015).

To demonstrate that the employer's stated reasons were pretextual, a plaintiff may cite "the employer's better treatment of similarly situated employees outside the plaintiff's protected group, its inconsistent or dishonest explanations, its deviation from established procedures or criteria, or the employer's pattern of poor treatment of other employees in the same protected group as the plaintiff[.]" *Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015) (citing *Brady*, 520 F.3d at 495 & n. 3). If relying solely on evidence of pretext, however, a plaintiff seeking to survive summary judgment must demonstrate that a "reasonable jury not only could disbelieve the employer's reasons, but also could conclude that the employer acted, at least in part, for a prohibited reason." *Id.* at 1096. Thus, in considering such evidence, the D.C. Circuit has emphasized that a court "does not sit as a super-personnel department that reexamines an employer's business decisions and may not second-guess an employer's personnel decision absent demonstrably discriminatory motive." *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1114 (D.C. Cir. 2016) (internal quotation marks and citations omitted).

## ANALYSIS

I. **Restrictions on Gospel Music**

In his supplemental briefing, Tyson stresses that his religious discrimination claim is solely predicated on Harriston's demands that Tyson turn his gospel music down or off.  *See* Pl. Supp. Mem. at 5–6; Pl. Supp. Mem. II at 4.  Tyson maintains that these actions constituted disparate treatment because other employees who listened to secular music were not subjected to similar restrictions.  *See id*.  USPS disagrees, contending that Tyson was never fully prevented from listening to gospel music, but instead was asked on certain occasions to lower the volume because it was too loud.  *See* USPS Supp. Mem. at 5 (citing USPS Ex. 2; USPS Ex. D at 57; Sec. Am. Compl., ¶ 6; USPS Ex. 9) (other citations omitted.)

Assuming, *arguendo*, that Tyson's version of events is accurate, and drawing all reasonable inferences in his favor, Harriston's alleged behaviors "though annoying and inconvenient, do not constitute materially adverse action[s]."  *Lewis v. District of Columbia*, 885 F. Supp. 2d 421, 428 (D.D.C. 2012) (citation and quotation omitted); *see also Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (explaining that Title VII requires material adversity because "it is important to separate significant from trivial harms"); *Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009) (holding that minor "inconveniences and alteration of job responsibilities do not rise to the level of [an] adverse action").  Although Tyson was unhappy about the allegedly unfair treatment, "not everything that makes an employee unhappy is an actionable adverse action."  *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001) (citation omitted); *Broderick v. Donaldson*, 437 F.3d 1226, 1233 (D.C. Cir. 2006) (same).

The Court is not aware of any authority to support Tyson's claim that a mere constraint on his ability to play music of his preference in his work area constitutes an adverse employment action.  To the contrary, courts have held that "an employee's complaints about his or her workstation do not involve a significant change in employment status required to be an adverse

action under Title VII[.]" *Coakley-Simelton v. Georgetown Univ.*, No. 18-cv-2014, 2020 WL 4569423, at *18 (D.D.C. Aug. 7, 2020) (citing *Brodetski v. Duffey*, 141 F. Supp. 2d 35, 45 (D.D.C. 2001)); *see also Lester v. Nastios*, 290 F. Supp. 2d 11, 27–30 (D.D.C. 2003) (concluding that close supervision or being "watched" does not constitute an adverse employment action that can support a Title VII claim).  While the alleged restriction on his music likely felt unfair, "[i]nconvenience and loss of enjoyment of life, while certainly meaningful to [Tyson], are not cognizable under Title VII[.]" *See Gunning v. Runyon*, 3 F. Supp. 2d 1423, 1429 (S.D. Fla. 1998).

For these reasons, Tyson's allegations of religious discrimination based on disparate treatment, arising from restrictions placed on his ability to play religious music at his workstation, cannot constitute an adverse action under Title VII, and USPS is therefore entitled to summary judgment on that claim.

## II. Reversion[15] of Position at GMF

Tyson claims that the rescission of his offer to fill the mail handler position at GMF was discriminatory because Harriston, motivated by animus, somehow caused the position to be eliminated after he learned that Tyson would be selected to fill it.  *See* Pl. Opp. at 11; Pl. Surrp. at 6; USPS Ex. D at 44.  A discriminatory denial of a lateral transfer can be actionable under Title VII, provided there exists an adverse impact on the employee's potential for career advancement.  *See Stewart v. Ashcroft*, 352 F.3d 422, 426 (D.C. Cir. 2003).  But "[a] court second-guessing an employer's decision not to create a position in order to transfer an employee .

---

[15]   In his supplemental briefing, Tyson discusses the meaning of the word "revert," implying that it should logically mean the "return" of a mail handler position at GMF to him.  *See* Pl. Supp. Mem. VI.  This interpretation lacks merit because the term "revert" is a term of art at USPS that is widely understood to mean "eliminate" and the elimination of the position in question was approved by several USPS supervisors.  *See* Def. Mem. at 5–6; Cole Decl., ¶ 11; *See* USPS Ex. 10.

. . [can] threaten[] impermissible judicial micromanagement of business practices . . . allowing any perceived workplace slight to be the subject of a Title VII action." *Morrison v. Mills*, 928 F. Supp. 2d 241, 247 (D.D.C. 2013) (citing *Baloch*, 550 F.3d at 1197) (internal quotation marks omitted).

Even assuming, *arguendo*, that Tyson experienced a denial of transfer or a lateral transfer,[16] and that USPS's actions caused him materially adverse consequences,[17] USPS has provided legitimate business reasons for its actions and there is no evidence of pretext or discriminatory animus. USPS relies on evidence that the announcement of the mail handler position at GMF was posted mistakenly and offered to Plaintiff in error. *See* Def. Mem. at 1–2, 12, 14, 16; Cole Decl., ¶ 11; Roane Decl., ¶ 8; USPS Ex. 9 at 2; USPS Ex. 10 at 2. USPS attests that the position was eliminated and never filled because decreased mail volume "resulted in insufficient work to justify [mail hander] positions" at some facilities, including GMF. *See* Roane Decl., ¶¶ 2–6; Cole Decl., ¶¶ 11, 14, 17; Reardon Decl., ¶ 3; USPS Ex. 9 at 3. Tyson disbelieves USPS's representations because, he asserts, "employees junior to [him]" in another building were transferred to GMF to "do work." *See* USPS Ex. D at 31. Tyson offers no other evidence to support that vague and conclusory statement, and such a statement alone is insufficient to create a genuine dispute of a material fact.

---

[16] USPS argues first that Tyson was not denied a lateral transfer to GMF because the vacancy posting was a simple mistake, evidenced by its swift rescission and the fact that it was never filled. *See* Cole Decl., ¶ 14; Def. Mem. at 12–14. USPS also disagrees with Tyson that his acceptance of this non-existent position and his presence and clock-in at GMF for approximately three hours provided him with status as a GMF employee such that his return to Curseen-Morris constituted a lateral transfer. *See* USPS Ex. F at 1–2.

[17] As noted, a material adverse consequence consists of a considerable change in benefits, significantly different responsibilities, a lost promotion, or a termination. *See Johnson v. Maddox*, 230 F. Supp. 2d 1 (D.D.C. 2002). Tyson claims that he experienced a loss in benefits because a position at GMF would have resulted in "less stress, less harassment, having to deal with less people[,]" namely avoiding occasional friction with Curseen-Morris co-workers and working preferable shifts. *See* USPS Ex. D. at 78–80; USPS Ex. F at 2; Pl. Opp. at 16. Tyson also claims that he lost the potential for increased overtime pay at GMF. *See* Pl. Opp. at 1–2; ECF No. 46-1 (Plaintiff Declaration), at 56–57. Finally, he claims that he is entitled to out-of-schedule pay for the inconvenience of working at hours considerably less advantageous than those he would have worked at GMF. *See* Pl. Opp. at 2; Pl. Decl. at 13; Pl. Surrp. at 1, 7.

Tyson insists that the elimination of the vacant position was entirely personal and motivated by Harriston's animus against Tyson's religious expression. *See* Pl. Opp. at 11; Pl. Decl., ¶¶ 49–50, 53; Pl. Surrp. at 6; USPS Ex. D at 44. But although Tyson vaguely alleges that Harriston "had a part" in composing the reversion letter sent by Cole and Roane, *see* Sec. Am. Compl., ¶ 65; Pl. Decl., ¶ 52, he fails to explain what this "part" was and offers no evidence of Harriston's actual involvement. *See* Pl. Opp. at 6, 8, 11–12, 15, 17; Pl. Opp. Add. at 3; Pl. Surrp. at 4. Cole, Roane, and Harriston all averred in sworn statements that Harriston did not participate in the reversion decision. *See* Cole Decl., ¶ 15; Roane Decl., ¶ 9; USPS Ex. 9 at 2. Beyond Tyson's own conjecture, he has failed to offer any admissible evidence controverting those sworn statements. Absent any connection between Harriston and the decision to revert the GMF mail handler position, there is no evidence that the reversion had anything to do with Tyson's religion.

At bottom, Tyson's arguments are supported only by his own unsubstantiated beliefs,[18] which are insufficient grounds for a reasonable juror to conclude that USPS's decision-making was "was so far off base as to suggest that [it] acted with a [discriminatory] motive." *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 299 (D.C. Cir. 2015). A plaintiff's allegations that are "generalized, conclusory and uncorroborated by any evidence other than the plaintiff's own deposition testimony" are "insufficient to establish a triable issue of fact"— at least where the nature of the purported factual dispute reasonably suggests that corroborating evidence should be available. *See Akridge v. Gallaudet Univ.*, 729 F. Supp. 2d 172, 183 (D.D.C. 2010); *see also Gen. Elec. Co. v. Jackson*, 595 F. Supp. 2d 8, 36 (D.D.C. 2009) (observing that when a

---

[18]   Tyson also attaches an unsworn and unauthenticated document, which contains statements of unknown origin and whose author is unidentified. *See* Pl. Opp. Exs. at 27. The document alleges that USPS could not revert a position after it was posted or offered. *See id*. No other argument, authority, or information is provided to support of this contention, and even if this were true, it does not create a dispute regarding discriminatory animus.

"declaration is self-serving and uncorroborated" it is "of little value at the summary judgment stage").[19]

USPS admits that it erred, both in posting the position and in failing to communicate effectively with Tyson and the Union. Those administrative failures fueled Tyson's suspicions, and caused him frustration and disappointment. But the Court's careful review of the record reveals no evidence to suggest illicit coordination among USPS employees and management to deny Tyson his earned right of first refusal, and certainly not based on his religion. Although Tyson provides a detailed breakdown of his alleged communications with Roane, Grigsby, and Sanders, even the most generous interpretation of those events fails to raise a material dispute about whether the position at GMF was reverted for nefarious reasons. Thus, Tyson fails to cast any doubt on the legitimate business reason offered by USPS, and USPS is entitled to summary judgment on Tyson's claim based on the reversion of the GMS mail handler position.

### III.     Constructive Discharge

Tyson's claim for "indirect" constructive discharge also must fail. *See* Sec. Am. Compl., ¶ 83. He alleges that the reversion of the position at GMF caused him to continue working at Curseen-Morris, where he suffered emotional distress and loss of enjoyment due to his fear of being injured on the job. *See id*.; USPS Ex. D at 79; USPS Ex. F. at 3–4. He testified that he sought psychological treatment for three years and was forced to retire early in September 2015

---

[19]     The Court is also unpersuaded by Tyson's reliance on his own personal overtime records to rebut USPS's assertions about declining mail volume and staffing needs. First, Tyson's paystubs are, in part, from the time that Tyson worked at Curseen-Morris, not GMF. Second, and more importantly, the Court agrees with USPS that "the payroll records of a single employee, or even a small subset of employees, are not sufficient to assess" USPS's mail levels or its complex employment needs or lack thereof. *See* Def. Reply at 5.

Nor may the Court consider an unauthenticated email, purportedly between Grigsby and his former attorney. *See* Pl. Opp. Exs. at 5. In the email, Grigsby attempts to recall a conversation with Harriston, where the latter explained to him that Harriston "had the job reverted because Tyson could not perform all of the duties that c[a]me with the job." *See id*. This document plainly contains hearsay and is inadmissible. *See Bortell v. Eli Lilly and Co*., 406 F. Supp. 2d 1, 11 (D.D.C. 2005). In any event, the email, on its face, does not support Tyson's theory of religious discrimination.

due to this stress.  *See* USPS Ex. D at 73; USPS Ex. F at 4.  According to Tyson, if he had worked at GMF instead, he would not have retired early and the GMF position "would have extended [his] tenure through 2023."  *See* Pl. Surrp. at 6.

To prevail on a constructive discharge claim, Tyson would need to convince a jury that (1) USPS discriminated against him; (2) USPS deliberately made working conditions intolerable; and (3) aggravating factors justified his conclusion that he had no option but to end his employment.  *See Clark v. Marsh*, 665 F.2d 1168, 1173–74 (D.C. Cir. 1981).  "The test for constructive discharge is an objective one: whether a reasonable person in the employee's position would have felt compelled to resign under the circumstances."  *Aliotta v. Blair*, 614 F.3d 556, 566 (D.C. Cir. 2010).  "[C]ourts have agreed that the standard for constructive discharge is quite high."  *Veitch v. England*, 471 F.3d 124, 134 (D.C. Cir. 2006) (Rogers, J., concurring).

The Court's ruling, *supra*, that Tyson has failed to offer any evidence of USPS's discriminatory intent is fatal to Tyson's constructive discharge claim.  The Court is "left without any discriminatory acts upon which [Tyson] could rest his constructive discharge claim[s]." *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1558 (D.C. Cir. 1997).  Thus, USPS is entitled to summary judgment with respect to that claim as well.

## CONCLUSION

For the foregoing reasons, the Court will grant USPS's motion for summary judgment, and will enter judgment in favor of Defendant.  A separate Order will issue this day.

Date:   November 19, 2021

                                              Florence Y. Pan
                                              United States District Judge